[Crim. No. 8161. Second Dist., Div. Four. Oct. 23, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. RALPH ELLIS GUTHAUS, Defendant and Appellant.

George E. Shibley for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and George W. Kell, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—An information filed by the District Attorney of Los Angeles County charged that defendant sold a narcotic, to wit, heroin, in violation of section 11501 of the Health and Safety Code. Pursuant to section 995 of the Penal Code, defendant made a motion to set aside the information. Following the denial of this motion, defendant entered a plea of not guilty. The jury returned a verdict finding defendant guilty as charged. Defendant's motion for new trial was denied. Probation was denied and defendant was sentenced to state prison for the term prescribed by law. This is an appeal from the judgment of conviction and order denying motion for new trial.

Basil Clark testified that he had formerly been a user of narcotics and had been acquainted with defendant. On April 24, 1961, Clark was taken to a substation of the sheriff's department where he placed a telephone call to defendant which was monitored by a sheriff's deputy over an extension

telephone. Clark dialed a telephone number which he had on previous occasions used to contact defendant. He recognized the answering voice as that of defendant, and he told him that he wanted "to make it," which in the jargon of narcotics' users means "to purchase some heroin." Defendant replied that "he had some" and he asked Clark to come to his house. Defendant inquired as to how much he wanted, and Clark told him that he wanted three grams.

Clark further testified that while at the sheriff's office he was asked to remove all his clothing and was searched to the skin by sheriff's deputies. Clark's automobile was also searched. Clark was then given $40 in four $10 bills, the serial numbers of which had been typed on a separate sheet of paper, which was retained by the sheriff's department. Clark proceeded to defendant's home in his automobile followed by members of the sheriff's narcotics squad in an unmarked vehicle. Clark stated he approached defendant's house alone, knocked on the door and was admitted by a man named Robert Patterson. A fourth person, Donald Coon, was also present in the home. Clark was directed to the bathroom where he observed defendant "capping up" some heroin which was in a green plate and which he was putting into small gelatin capsules. Defendant gave Clark eighteen filled capsules in exchange for the four $10 bills which were supplied by the sheriff's department.

Defendant told Clark he could "fix" there if he wanted to. Clark declined, stating he had some girls waiting for the heroin. Clark took the capsules, which defendant had placed in an empty cellophane package, and left with Patterson and Coon. Clark then gave the package of capsules to Coon to hold while he was driving, and Coon placed the package in his right sock. Before they left, one of the men said he wanted to get his "outfit" from his car which was parked across the street. He returned with something wrapped in a towel. They had driven approximately two blocks when the sheriff's deputies stopped their car, searched all three men, discovered the heroin, and placed them under arrest.

One of the deputies took Clark back to defendant's home and furnished him with another $10 bill. The deputy watched through the rear side window of Clark's automobile while Clark entered defendant's home. Clark told defendant that Coon and Patterson "had burnt him," meaning that they had stolen the heroin. He told defendant he had $10 more and wanted another half gram. Defendant started to go to the

bathroom to get the heroin when footsteps were heard on the porch and instantly the door was caved in by the sheriff's deputies.

The deputy who had remained in Clark's automobile testified he had waited 20 or 30 seconds, at which time the other deputies drove up in their automobile. He then got out of Clark's car, jumped over the fence; ran across the lawn to the front porch; pulled open the screen door which was secured by a hook; and with two kicks crashed open the front door. He ran through the living room into a bedroom and a closet before he discovered defendant in the bathroom where he was standing over the sink rinsing off a green plate. Nothing remained on the plate, and a later investigation failed to find any traces of heroin in the sink plumbing. Defendant was immediately placed under arrest, and four $10 bills were removed from his wallet. Immediately the bills were compared with, and found to correspond to, the list of serial numbers taken from the bills previously furnished to Clark. The search also revealed two boxes of gelatin capsules which were in the bathroom.

Defendant took the stand on his own behalf and denied many of the material facts which were testified to by Basil Clark, Donald Coon and three sheriff's deputies, all of whom testified in behalf of the People. He admitted he had a phone conversation with the witness Clark but said Clark called him because he owed defendant $50. He told Clark to come over, Clark arrived and gave him $40 and said he would give him the other $10 as soon as he could get it. He admitted Clark returned and while Clark was there the officers broke down the door, searched his house and arrested him. Defendant admitted a prior narcotic conviction for which he served a term of imprisonment in the federal prison. He admitted he was familiar with the way capsules of heroin are prepared. He said a gram of heroin will make ten capsules. He agreed it is more or less customary on the part of narcotic peddlers to keep narcotics near the toilet so they can be flushed down in case of danger.

Defendant contends that the mode of entry of his home was illegal, being in violation of article I, section 19 of the California Constitution and the Fourteenth Amendment of the United States Constitution, and that this illegal mode of entry makes any evidence obtained thereby illegal and inadmissible. The specific testimony which defendant contends should be

excluded as evidence concerns testimony of the serial numbers of the bills furnished to Clark by the sheriff's department.

The United States and California constitutional provisions prohibits only unreasonable searches and seizures (*Harris* v. *United States,* 331 U.S. 145, 150 [67 S.Ct. 1098, 91 L.Ed. 1399]; *People* v. *Dillard,* 168 Cal.App.2d 158, 164 [335 P.2d 702]), and in each instance the primary question is whether the search and seizure was reasonable. (*People* v. *Brown,* 45 Cal.2d 640, 643 [290 P.2d 528].) When a police officer has reasonable cause to enter a dwelling to make an arrest and reasonable cause to make a search incident to the arrest, his entry and his search are not unreasonable. (*People* v. *Maddox,* 46 Cal.2d 301, 306 [294 P.2d 6].)

The mode of entry in this case which is alleged to have violated constitutional guarantees, was the violation of section 844 of the Penal Code which requires that a police officer demand admittance and give an explanation of the purpose for which admittance is desired before forcibly breaking into a person's home. Illegally obtained evidence is excluded "on the ground that the government must not be allowed to profit by its own wrong and thus encouraged in the lawless enforcement of the law." (*People* v. *Martin,* 45 Cal.2d 755, 761 [290 P.2d 855].) It is true that the government may profit by noncompliance with section 844 in that the demand and explanation requirements may cause a delay which would permit destruction or secretion of the evidence.

But as stated in *People* v. *Maddox, supra,* 46 Cal.2d at 306, "Suspects have no constitutional right to destroy or dispose of evidence, and no basic constitutional guarantees are violated because an officer succeeds in getting to a place where he is entitled to be more quickly than he would, had he complied with section 844. Moreover, since the demand and explanation requirements of section 844 are a codification of the common law, they may reasonably be interpreted as limited by the common law rules that compliance is not required if the officer's peril would have been increased or the arrest frustrated had he demanded entrance and stated his purpose. [Citations.] Without the benefit of hindsight and ordinarily on the spur of the moment, the officer must decide these questions in the first instance.

" . . . . . . . . . . . .

"[W]hen there is reasonable cause to make an arrest and search and the facts known to him before his entry are not inconsistent with a good faith belief on the part of the

officer that compliance with section 844 is excused, his failure to comply with the formal requirements of that section does not justify the exclusion of the evidence he obtains.''

In this case the sheriff's deputies had reasonable cause to believe that a felony was being committed in the house, to wit, the possession and sale of narcotics. As experienced members of a narcotics squad, they were entitled to conclude in good faith that if they informed the defendant of their presence and demanded admission before breaking into the premises, he might attempt to dispose of the narcotics then in his possession. While an officer does· not have the benefit of hindsight in determining whether compliance with section 844 is excused prior to the entry, it should be noted that in this case the reasonableness and good faith of the officers' conclusion was supported by the fact that defendant was able to dispose of the narcotics in spite of the noncompliance with the statute.

Defendant's next contention involves three affidavits (those of defendant's wife, defendant's brother, and a personal friend of defendant's brother) which were filed in support of the motion for new trial. Read together the affidavits describe fragments of conversations between jurors who were in the hallway of the courthouse during the second day of the trial. The affidavits declare that the conversations ''appeared to be about the testimony of defendant.'' Such characterizations as ''farfetched . . . fantastic . . . ridiculous'' were alleged to have been used by the jurors, together with such statements as ''his story is just too unbelievable . . .'' One affidavit also alleged, ''I heard one of the women jurors in the group who was seated on the bench ask in substance, 'Did he say it was for a soap dish or an ash tray?' '' Defendant contends that this last statement was obviously in reference to his testimony regarding his use of the green plate. Defendant admits that he cannot ascertain the identity of any of the particular jurors who took part in this conversation.

Defendant contends that the court erred in accepting counteraffidavits of the jurors which stated in substance that they did not engage in any conversation concerning defendant's case other than in the jury room at the time of deliberation. Defendant's motion for new trial was based on section 1181, subsections 2 and 3 of the Penal Code. Subsection 2 provides that the court may grant a new trial where the jury received evidence out of court. The affidavits submitted by defendant make no showing that any out-of-court evidence had in fact

been received. Defendant states that subsection 3 is applicable in that the conversation constituted misconduct. The subsection provides that the court may grant a new trial "When the jury has . . . been guilty of any misconduct by which a fair and due consideration of the case has been prevented."

"[T]he decision of the trial court in denying a motion for a new trial after considering conflicting affidavits is final in the absence of a showing of abuse of discretion. . . ." (*People* v. *Henderson,* 79 Cal.App.2d 94, 124 [179 P.2d 406].)

While the affidavits of the jurors which generally denied the alleged misconduct are admittedly weak evidence that such misconduct did not occur (see *In re Winchester,* 53 Cal.2d 528, 533 [2 Cal.Rptr. 296, 348 P.2d 904]), on the other hand, affidavits of defendant's friends and relatives, which allege fragments of conversations between jurors which, in their opinion, appeared to be about defendant's case, are equally weak as evidence of prejudicial misconduct, especially where the affidavits fail to name any specific juror. (See *Stickel* v. *San Diego Electric Ry. Co.,* 32 Cal.2d 157, 170 [195 P.2d 416].) A general discussion of the case between jurors during recess, while not to be approved, is not as a matter of law prejudicial (*People* v. *Henderson, supra,* 79 Cal.App.2d at 123), and in the absence of a showing of an abuse of discretion the finding of the trial court as to the absence or existence of prejudicial misconduct will not be disturbed on appeal.

Defendant's final contention is that the prosecuting attorney was guilty of prejudicial misconduct in making several remarks to the jury which gave evidence not presented by the testimony of witnesses; also that he misquoted testimony given; and gave subtle suggestions of conclusions not supported by evidence.

After carefully reviewing the alleged prejudicial statements of the prosecutor, we feel that this contention is trivial and without merit. The statements did not present new facts which could have been considered as evidence by the jury; the alleged misquotations were not changes in the substance of what had been said, and it was obvious from the context of these statements that the prosecutor was not attempting to quote testimony verbatim. The subtle suggestions of conclusions allegedly not supported by evidence were entirely proper as reasonable inferences which may be drawn from the evidence. (See *People* v. *Hoyt,* 20 Cal.2d 306, 318 [125 P.2d 29].)

 " 'The right of counsel to discuss the merits of a case, both as to the law and facts, is very wide, and he has the right to state fully his views as to what the evidence shows, and as to the conclusions to be fairly drawn therefrom. The adverse party cannot complain if the reasoning be faulty and the deductions illogical, as such matters are ultimately for the consideration of the jury.' (*People* v. *Sieber*, 201 Cal. 341, 355-356 [257 P. 64].) In the argument before the jury, any reasonable inference may be drawn from the evidence, and it is a matter within the discretion of the trial court to determine whether counsel stays within the permissible range of discussion. [Citation.]" (*People* v. *Eggers*, 30 Cal.2d 676, 693 [185 P.2d 1].)

The judgment of conviction is affirmed and the purported appeal from the order denying new trial is dismissed.

Burke, P. J., and Ford, J.,* concurred.

A petition for a rehearing was denied November 9, 1962, and appellant's petition for a hearing by the Supreme Court was denied December 19, 1962.

*Assigned by Chairman of Judicial Council.