[Crim. No. 10767.   Second Dist., Div. Four.   Jan. 18, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN CHARLES MANNING, Defendant and Appellant.

Glory D. Coffey, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, George J. Roth and Michael Smolen, Deputy Attorneys General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendant was charged by information in Count I with possession of marijuana, in violation of section 11530 of the Health and Safety Code; and, in Count II, with illegal possession of a dangerous weapon, in violation of section 12020 of the Penal Code. The second count was dismissed pursuant to a motion under section 995 of the Penal Code. Defendant pled not guilty to the narcotic count; trial by jury was duly waived; and he was found guilty. Proceedings were suspended and he was placed on probation for five years. He has appealed "the judgment of conviction . . . and the (Suspended) sentence imposed thereon." We regard this as the permissible appeal from the order granting probation under subdivision 1 of section 1237 of the Penal Code.

The arresting officers were advised, by a woman, recently admitted as a prisoner to the county jail, that defendant (known to one of them as involved in narcotics) had a supply of narcotics in a closet situated near the elevator on the third floor of the apartment house wherein he resided. It is not contended that this informant was "reliable" as that term is used in cases involving the issue of probable cause.

The officers, acting on this tip, went to the apartment house and discovered that there was a locked closet in the place indicated. They identified themselves to Mrs. Landon, the manager, and, at their request, she opened the closet. A search disclosed two pistols, some marijuana seeds, and a marijuana cigarette, together with suitcases, clothing, and other objects. On inquiry, the manager told the officers that defendant stored articles in the closet, that only the manager, her husband, and defendant had keys to the closet, and that, except for the suitcases which belonged to a friend of defendant, she thought everything else in the closet belonged to defendant.

The officers then went to defendant's apartment. The events there were described by the officer as follows:

"Then my partner and I proceeded to the front door of apartment 104 and I knocked on the door. After approximately 10 seconds the defendant John Manning came to the door and opened the metal door which is a peephole in the front door itself, and I recognized the defendant from prior contacts with him as being John Manning.

"I said, 'Hi, John. You remember me? It's Seybert. I am a policeman.'

"He said, 'No, I don't recognize you.'

"I was holding up my badge to my face in front of the peephole. He said, 'Do you have a warrant?'

"And I said, 'No, you are under arrest, John.'

"And he said, 'Oh, no,' and then he backed away and started running away from the front door and I felt that he was going to destroy more narcotics and arm himself with another gun, and I forced entry into the apartment, and as I entered the living room area of the apartment I discovered the defendant Manning standing in the middle of the front room area.

"Q. Was anyone else in the apartment with him?

"A. There was. There was a person whom we later arrested and booked by the name of Doris Stone.

"Q. Did you find any keys inside the apartment?

"A. Yes, on the defendant Manning which was a key ring, detractable type key ring which had, I believe, eight keys on it, at which time I later tried these keys in the closet door and found that one of the keys actuated the lock on the third floor closet.

"Q. Which contained the marijuana?

"A. In which I found the marijuana."

Search of the apartment disclosed narcotic paraphernalia.

Defendant here contends that the evidence against him was obtained by unlawful means. We do not agree.

Whether or not the jail house informant was "reliable," the officers clearly were entitled to check out the information given them. Since the manager was in apparent joint possession of the closet, as evidenced both by her statements and by her possession of a key to its door, entry therein and search thereof, if done with her consent, was legal (*People* v. *Gorg* (1955) 45 Cal.2d 776, 783 [291 P.2d 469]; *People* v. *Howard* (1958) 166 Cal.App.2d 638, 651 [334 P.2d 105]). This is not a case, such as those relied on by defendant, where the managerial consent was to enter into the private quarters of the defendant.

The officers testified that Mrs. Landon's consent was freely and voluntarily given. Defendant points out that, in her testimony, she stated she "assumed" the officers had a warrant and that "I don't think I am supposed to" consent to such a search without a warrant. However, the issue of whether or not the consent was given freely or merely in subjection to authority is primarily for the trial court; the record shows that he considered the divergent lines of testimony and accepted the police version; we cannot substitute our view

for his. We hold that the search of the closet was legal and the testimony as to the objects therein discovered not open to the objection made.

A more serious problem exists with reference to attributing the marijuana and guns to defendant. As to this, the officers had, first, the information from the prisoner, whose story, originally untested, had now been confirmed in part—there was a closet where she had said it was, and that closet contained marijuana. Secondly, they had the statement of the manager that defendant had access to the closet, that he was the only person with such access other than the manager and her husband, and that the contents of the closet had been placed there by defendant. It is true that the officers had no prior acquaintanceship with Mrs. Landon and that—except for inferences drawn from her position—her integrity and honesty were untested. But, as we recently said in *People* v. *Gamboa* (1965) 235 Cal.App.2d 444, 448 [45 Cal. Rptr. 393]: ''The totality of information, coming from a number of independent sources, may be sufficient even though no single item meets the test. If the smoke is heavy enough, the deduction of a fire becomes reasonable.''

At this point, the smoke, although admittedly not black, was at least dark, and more than justified the officers in seeking a personal interview with their suspect. We think that the conduct of defendant, when such an interview was sought, gave the final touch needed (even if the earlier data was not itself adequate). Defendant did not merely stand on his right to demand a warrant and exclude the officers; he ran—conduct which, as many reported cases show, when engaged in by one known to be involved with narcotics, reasonably suggests to experienced narcotic officers a purpose to destroy evidence, if not to prepare for armed resistance. We think that the officers, having told defendant that he was under arrest, and hearing the running feet, had reasonable cause to think defendant the possessor of the guns and marijuana already found and probably the possessor of more guns and more marijuana. The smoke was now dark enough. Every requirement imposed by section 844 of the Penal Code[1] for a

---

[1]Penal Code section 844: ''To make an arrest, a private person if the offense be a felony, and in all cases a police officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired.''

forcible entry had been met. The entry and the arrest were valid;[2] the search of the apartment was incident to that arrest; the test of defendant's key with its verification of his power of entry into the closet was likewise proper; and the evidence secured was admissible.

The order appealed from is affirmed.

Files, P. J., and Jefferson, J., concurred.

---

[2]It is agreed, by both counsel, that the statement by the officer, above quoted, that defendant was ''under arrest,'' made while the officer was speaking to defendant through the peephole in the door, did not constitute an actual arrest. Under sections 834 and 835 of the Penal Code, no arrest takes place unless and until the person sought to be arrested is under actual restraint of the officer or the person has submitted to the officer's custody. Neither of these requirements were here met; no arrest had then taken place (*People* v. *Morris* (1963) 221 Cal.App.2d 99, 102 [34 Cal.Rptr. 308]; *Davis* v. *California* (1965) 341 F.2d 982, 986). It was the conduct of defendant, after being advised of the officer's intent to arrest, which, added to the information earlier obtained, gave the reasonable cause to make the arrest which followed after the entry into the apartment.