[Crim. No. 286. Fifth Dist. Nov. 7, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. PHILLIP
GARCIA PEREZ, Defendant and Appellant.

Chris E. Rockas, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer, David L. Wasserman and Frank O. Bell, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

CONLEY, P. J.—Our first opinion in this case is reported in 253 Cal.App.2d 288. The Supreme Court had denied appellant's petition for a hearing, but, on the ground of failure of an appointed attorney to file a brief, later directed this court to recall the remittitur, vacate its judgment, and proceed in accordance with *Anders* v. *State of California,* 386 U.S. 738 [18 L.Ed.2d 493, 87 S.Ct. 1396] and *People* v. *Feggans,* 67

Cal.2d 444 [62 Cal.Rptr. 419, 432 P.2d 21]. This was done, and a new attorney was appointed, as requested by appellant; he filed an opening and closing brief and made a comprehensive oral argument.

Phillip Garcia Perez and Lydia Garcia Reyes, his companion, were charged with the possession of narcotics in the form of heroin, thus violating section 11500 of the Health and Safety Code. Perez entered a plea of not guilty; he was tried by a jury and found guilty as charged. Lydia Garcia Reyes pleaded guilty, and she is not involved as a party to this appeal. Probation was denied, and Perez was sentenced to state prison.

Gary Shoemaker, who had been an agent for the Bureau of Narcotic Enforcement of the State of California for ten years, went to 3934 East McKenzie in Fresno on December 1, 1965; he had obtained a search warrant; he did not knock at the door but went into the house from the alley through the rear door. He was accompanied by Agents Lacey and Sherwood from his office, Officers Thrasher and Packard from the Fresno Police Department, and a representative of the Fresno district attorney's office. Shoemaker first saw Lydia Reyes standing at a kitchen table, and then Perez in the living room. Perez placed one hand to his mouth and took a step toward the front door. Shoemaker and Agent Sherwood seized Perez and a struggle followed, which caused defendant to fall to the floor. The officers did not retrieve what they testified Perez put in his mouth. At that time, Shoemaker left the living room and returned to the kitchen; when he again walked into the living room, Agent Lacey arrested Perez. Shoemaker testified that some five or ten minutes after the arrest, Perez stated, "Man, that was close. I just swallowed two papers." The officers searched the entire house and took Perez and Miss Reyes with them to be booked at the jail.

John L. Lacey, a California narcotics agent, testified that he was also in the house at the time of the arrest, and that, while the scuffling was going on, he noticed something orange, which he thought was a balloon, in defendant's mouth, and then heard defendant yell, "I am sorry. I swallowed it." Lacey testified that he heard Perez say, after his arrest, "Boy, that was sure close. I swallowed two papers."

Gilbert D. Thrasher, a Fresno police officer in charge of the narcotics detail, was also in the residence at the time of the arrest; he testified that after entering the front door he immediately went to the kitchen area, taking Lydia Reyes from the

living room to the kitchen with him, and that he there noticed a blackened spoon lying on the drainboard, a burned white paper in the wastebasket, a burned match cover on the ashtray, a hypodermic needle lying on the floor near the wastebasket by the sink, and an eye dropper in the wastebasket along with some parts of balloons.

Louis Moller, a chemist agent for the Bureau of Narcotic Enforcement, testified that he found a sticky substance on the spoon, which chemical analysis showed was heroin, and that he believed there was enough residue for a person actually to receive an injection of heroin from it.

The appellant presents four arguments for reversal:

1) That the evidence seized was illegally obtained and, therefore, inadmissible;

2) That the evidence as a whole is insufficient to support a guilty verdict;

3) That the court committed prejudicial error by admitting into evidence repeated references to other criminal activities alleged to have been discussed previously by appellant; and

4) That the court erroneously instructed the jury.

The principal ground for reversal urged by the defense is that the apparatus by which injections of heroin are made, was improperly admitted in evidence because when the raid took place the officers did not preliminarily request admittance, pursuant to the requirements of section 1531 of the Penal Code. The officers were, in fact, armed with a search warrant for the house in question; all of them except Officer Thrasher went to the back door, and Thrasher went to the front door. Officer Shoemaker was asked whether he entered the rear door, and he said that he did. He said that the door had a latch on it; that he put his hand through the screen and unlatched it. He was asked if he did not knock on the door or press the bell button for entry, and he stated that there was no bell button, but he did not knock on the door.

Appellant relies principally on *People* v. *Gastelo*, 67 Cal.2d 586, 588 [63 Cal.Rptr. 10, 432 P.2d 706], wherein the defendant was also convicted of possession of heroin; there Los Angeles police officers had obtained a warrant for search of an apartment of a woman with whom defendant was living, on the basis of a statement by a reliable informant. Four officers went to the apartment; they saw an automobile outside which they believed to be defendant's; two officers went to the rear door and two to the front, and, without knocking or announcing their purpose or demanding admittance, they forced entry

through both doors; defendant and the woman were asleep in the bedroom, and the officers pulled defendant from the bed; they served the warrant and searched the apartment and found a small packet of heroin. The Supreme Court held, in an opinion of Chief Justice Traynor, that the officers failed to comply with section 1531 of the Penal Code, which provides that to execute a search warrant the ''officer may break open any outer or inner door or window of a house, . . . or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance.'' Justice Traynor said in the *Gastelo* case that the Attorney General argued that unannounced forcible entry to execute a search warrant is always reasonable in narcotics cases, because narcotics violators may destroy the evidence at the first sign of an officer's presence; the court did not agree with that view and said that neither the California Supreme Court ''nor the United States Supreme Court has held that unannounced forcible entries may be authorized by a blanket rule based on the type of crime or evidence involved.'' The opinion continues by saying that under the Fourth Amendment, ''a specific showing must always be made to justify any kind of police action tending to disturb the security of the people in their homes. Unannounced forcible entry is in itself a serious disturbance of that security and cannot be justified on a blanket basis.'' The court held in the *Gastelo* case that there was nothing to justify the officers' failure to comply with section 1531 of the Penal Code, and the illegally obtained evidence should have been excluded in compliance with an objection which had been made to its admission.

The *Gastelo* case holds that there was nothing in that record to justify the officers' failure to comply with section 1531 of the Penal Code and that, consequently, the questioned evidence in that case should have been excluded. In passing, it may be noted that the events of the present raid, considered after its happening, support from a practical standpoint the belief of the law enforcement officers as to the necessity for rapid action. Testimony on behalf of the People was to the effect that the appellant, by his own admission, swallowed part of the heroin in his possession. If the officers had given explicit warning of the imminence of the raid, it is likely that the tell-tale heroin would have been destroyed even more successfully. In the proof by the prosecution that the appellant knew that heroin was a forbidden drug and that he was acquainted with the technique of injecting it and the danger

involved in its possession, it also, incidentally, showed that the narcotic enforcement officers were thus warned that if they did not act quickly in the raid, they could never present convincing evidence of appellant's guilt. However, it is not necessary to rely upon these factors inasmuch as there was no objection of any kind by the defendant preceding or during the trial to the admission in evidence of the personal property observed and taken in the raid, and no motion was made in the superior court to suppress this evidence. Appellant claims that an objection was made at the preliminary examination, but there is nothing in the record to substantiate the claim, and, even if true, it is immaterial. As clearly stated in the recent case of *People* v. *Flores,* 68 Cal.2d 563 [68 Cal.Rptr. 161, 440 P.2d 233] (opinion modified on an unrelated point in 68 Cal.2d 567-568), appellant has shown no ''special circumstances'' which would justify departure from the rule that errors not challenged at trial cannot serve as the grounds for reversal on appeal. As is said in the *Flores* opinion, *supra,* at page 567: ''If defendant had appropriately objected, the prosecution might have been able to show that the officer complied with the notification requirements of section 1531 before entering the apartment [appellant's residence] or that special circumstances justified an unannounced entry.'' (See also *People* v. *Rosales,* 68 Cal.2d 299, 306 [66 Cal.Rptr. 1, 437 P.2d 489]; *People* v. *Robinson,* 62 Cal.2d 889 [44 Cal.Rptr. 762, 402 P.2d 834].)

The appellant says that ''the evidence as a whole was insufficient to warrant the jury in finding him guilty of violation of section 11500 of the Health and Safety Code of the State of California, . . . that the doctrine of reasonable doubt applies to proof of guilt and not to the establishment of each incident or event inculpating the defendant,'' and that ''. . . a reasonable doubt that would warrant acquittal is one that results or arises from a consideration of all of the evidence in the case,'' (citing *People* v. *Kross,* 112 Cal.App. 2d 602 [247 P.2d 44]; *People* v. *Nunn,* 65 Cal.App.2d 188 [150 P.2d 476] and *People* v. *Zammora,* 66 Cal.App.2d 166 [152 P.2d 180].) The appellant thus fails to keep in mind that the doctrine of reasonable doubt applies to a trial jury but not to the technique of an appellate court. As is said in *People* v. *Hillery,* 62 Cal.2d 692, 702-703 [44 Cal.Rptr. 30, 401 P.2d 382]: ''Moreover, 'It is the trier of fact, not the appellate court, that must be convinced of a defendant's guilt beyond a reasonable doubt. If the circumstances reasonably

justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.' (*People* v. *Robillard* (1960) 55 Cal.2d 88, 93 [10 Cal.Rptr. 167, 358 P.2d 295, 83 A.L.R.2d 1086]; accord, *People* v. *Love* (1960) 53 Cal.2d 843, 850-851 [3 Cal. Rptr. 665, 350 P.2d 705]; *People* v. *Daugherty* (1953) 40 Cal.2d 876, 884-886 [256 P.2d 911]; *People* v. *Newland* (1940) 15 Cal.2d 678, 680-683 [104 P.2d 778].) As enunciated by the late Justice Carter in the *Daugherty* case, *supra*, at page 885 of 40 Cal.2d, 'The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact. It is not whether guilt is established beyond a reasonable doubt.' "

In *People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778], it is said: "The court on appeal 'will not attempt to determine the weight of the evidence, but will decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt.' " (See also: *People* v. *Groom*, 60 Cal.2d 694, 697 [36 Cal.Rptr. 327, 388 P.2d 359]; *People* v. *Rosoto*, 58 Cal.2d 304, 321 [23 Cal.Rptr. 779, 373 P.2d 867].)

Furthermore, the appellate court has the duty to accept as true all of the evidence, even though contradicted, which supports the result of the trial, including all fair inferences from the testimony. Time after time in his briefs the appellant casts aspersions on the testimony of the officers who took the witness stand on behalf of the People. If there is a difference, and there were many differences, in the evidence received at the trial as between the appellant and his companion on the one hand and the peace officers on the other, it is our duty on appeal to accept the truth of the evidence adduced on behalf of the People.

Was there evidence of the possession of heroin by the appellant? There are two instances which, taken separately or together, constitute ample proof of the fact. While the defendant's witnesses claimed that the paraphernalia for effecting an injection of heroin and the heroin on the spoon belonged to Miss Reyes, that was not the theory of the prosecution; there was ample evidence to show by legitimate inference that there was joint possession by the two defendants of the instruments and the heroin. Both defendants were confessed habitues, and it would seem strange that the appellant, who was admittedly taking heroin regularly, should not have

the instruments in his home for the purpose of effecting such injections. The evidence was such as to authorize the jury to make an implied finding of jointly held possession not only of the paraphernalia necessary to give an injection of heroin, but of the heroin which was found in the spoon and which, under the testimony of Chemist Agent Moller, was sufficient in quantity to permit its being taken as a ''fix,'' or dosage of the forbidden drug. We thus have, in this instance, specific evidence of the possession of heroin in a sufficient quantity to constitute a crime. In order to convict a person of possession of heroin, there must be proof that there is a sufficient amount either to permit use or a sale; the presence of minute fragments, which cannot be utilized in either fashion, is not sufficient to warrant a conviction for possession. (*People* v. *Leal,* 64 Cal.2d 504 [50 Cal.Rptr. 777, 413 P.2d 665]; *People* v. *McCarthy,* 64 Cal.2d 513 [50 Cal.Rptr. 783, 413 P.2d 671]; *People* v. *Thomas,* 246 Cal.App.2d 104 [54 Cal.Rptr. 409].) The testimony of Chemist Agent Moller met the requirement.

Entirely apart from the foregoing evidence, the testimony of several police officers was that the appellant admitted more than once that he had swallowed two ''papers'' of heroin which he crammed into his mouth when the raid started. The admission by the defendant that he had swallowed two dosages of heroin at the commencement of the raid supports the conviction. There was also evidence that the appellant knew what heroin was and that it was a forbidden substance.

The defendant also objects to the testimony of law enforcement witnesses that the appellant appeared to attempt to get away through the front door. It has been uniformly held that flight after an alleged offense affords some basis for an inference that a defendant thereby evidences a consciousness of guilt. (Pen. Code, § 1127c, *People* v. *Santo,* 43 Cal.2d 319, 327 [273 P.2d 249]; *People* v. *Clifton,* 248 Cal.App.2d 126, 130 [56 Cal.Rptr. 74]; *People* v. *Jack,* 233 Cal.App.2d 446, 458 [43 Cal.Rptr. 566].) These authorities constitute a legitimate ground why the evidence was properly received for what it was worth.

 Appellant argues that the court committed prejudicial error by the admission into evidence of references to alleged discussions by him with law enforcement officers of other criminal activity relative to the use of heroin. In this case, the evidence of the prior activity was introduced to show knowledge by the appellant of the narcotic nature of heroin and

that its possession was unlawful. The trial judge clearly instructed the jury that it must consider the evidence for the one purpose only of showing knowledge as to the nature of heroin on the part of the appellant. Agent Lacey was allowed to testify that about three weeks after December 1, 1965, following the arrest, he met Perez at the intersection of Inyo and "F" Streets and that Perez made a statement to him that the officers had never "gotten him good," that in the then pending case he had "swallowed the stuff." The agent then testified for the purpose of showing defendant's knowledge of the narcotic nature of the substance that on January 26, 1965, some 12 months before the arrest, he conversed with defendant in a residence on the west side of town and at other locations. There was an objection to this evidence, and an offer of proof was made outside the presence of the jury; the district attorney offered to show that on these prior dates, defendant made admissions that he was a narcotic addict, that he had knowledge of the narcotic nature of heroin, and that he knew the character of the substance he possessed at the time of his arrest. Later, Agent Lacey was permitted to testify that on January 26, 1965, he talked with the defendant at the Fresno office of the Bureau of Narcotic Enforcement, and they discussed narcotics and defendant's use of them, and that on January 27, 1965, in the Fresno County jail, Lacey talked again with Perez about narcotics and looked at needle marks on his arms. There was also testimony about a conversation on August 18, 1965.

In this type of case it is imperative for conviction that the People prove that the defendant had *knowledge* that whatever substance was possessed was a narcotic; consequently, evidence of appellant's knowledge of the nature of heroin was relevant and, in fact, essential to the People's case. The judge, at the time Lacey testified, spoke to the jury, saying: "THE COURT: Well, I want to say to the jury that you will be instructed as to the limited character of the evidence which you are about to hear and at an appropriate time. I may say to you that it does not have to do directly with this offense, but the only purpose for which I am going to admit this evidence is to show knowledge, if it be shown. The purpose is to permit the District Attorney to show knowledge on the part of this defendant of the character of the items, that were found in his particular kitchen and also of the character of narcotics as such. But it has no relation to the direct proof of the commission of this offense, but only has to do with the

matter of knowledge by the defendant of the character of the items that were found or that were discovered in these premises or were there at the time the officers entered, or with the behavior of the defendant thereto. It does not prove that he was guilty of this offense as such, but only proves knowledge of the items that were there and what they were." The evidence was admissible to show knowledge.

■ Appellant's final argument is that the court instructed the jury that the possession of any amount of heroin constituted a violation of the law, and that the giving of this instruction was error. The court instructed: "You are further instructed that the law does not fix any minimum amount of heroin that is necessary to constitute the possession thereof. The possession of heroin in any amount constitutes a violation of the law where the possessor has knowledge of its presence and of its narcotic character."

It is clear that this instruction is error in the abstract. (*People* v. *Leal, supra,* 64 Cal.2d 504, 512; *People* v. *McCarthy,* 64 Cal.2d 513 [50 Cal.Rptr. 783, 413 P.2d 671].) However, the error is not prejudicial, because the only evidence relative to heroin was that the amount on the spoon was substantial enough for a "fix," and that the two "papers" swallowed by the appellant at the commencement of the raid were enough for two dosages. The evidence of the chemist that there was sufficient narcotic for consumption found in the spoon was uncontroverted, and the appellant admitted swallowing two "papers" containing the drug. Because of this evidence, the error in this instruction was not prejudicial.

We see no reason to change the conclusion reached by us in our former opinion reported in 253 Cal.App.2d 288.

The judgment of conviction remains approved.

Gargano, J., concurred.