71 Cal.2d 18 (1969)
453 P.2d 353
76 Cal. Rptr. 809
THE PEOPLE, Plaintiff and Respondent,
v.
MARIO DE SANTIAGO, Defendant and Appellant.
Docket No. Crim. 12033.
Supreme Court of California. In Bank.
April 24, 1969.
*20 Daniel L. Dintzer, under appointment by the Supreme Court, for Defendant and Appellant.
Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Thomas Kerrigan, Deputy Attorney General, for Plaintiff and Respondent.
Evelle J. Younger, District Attorney (Los Angeles), Harry Wood and Harry B. Sondheim, Deputy District Attorneys, as Amici Curiae on behalf of Plaintiff and Respondent.
SULLIVAN, J.
In a nonjury trial defendant Mario De Santiago was acquitted of a charge of selling heroin (Health & Saf. Code, § 11501) and convicted of the possession of heroin for sale (Health & Saf. Code, § 11500.5). His motion for a new trial was denied, criminal proceedings were adjourned, and, after proceedings had pursuant to Welfare and Institutions Code section 3051 et seq., defendant was committed to the state hospital at Corona for treatment as an addict. We properly entertain, in these circumstances, defendant's appeal from the order denying his motion for a new trial.[1]
On February 10, 1966, Deputy Sheriffs Trujillo and Penland, together with other officers, by prearrangement met one Henry Estrada, a reliable informer, in an alley near defendant's apartment. Earlier that day Estrada had told Deputy Trujillo of a conversation with defendant during which the latter stated that on February 8 he had been arrested by *21 narcotics officers for "marks," that he had tricked them into releasing him by offering to help them apprehend a "dope peddler," but that he never contacted the officers. Estrada also told Deputy Trujillo that he had purchased heroin from defendant on two occasions. At the meeting place near the apartment, the officers searched Estrada but found neither contraband nor money on his person. They then supplied him with marked currency and watched him proceed along a walk leading to defendant's apartment. About five minutes later Estrada returned with a balloon containing white powder, later determined to be heroin, which he said he had bought from defendant after being admitted into the apartment.
The deputies thereupon contacted defendant's landlord, and advised the latter that they were conducting a narcotics investigation and were waiting for defendant to come out of the apartment so that they would not have to break in through the door. After waiting an hour for defendant to leave, Deputy Trujillo advised the landlord that the officers would have to make a forcible entry. Without knocking or otherwise demanding admittance or explaining the purpose for which admittance was desired, Deputy Trujillo kicked open the door to defendant's apartment and immediately placed defendant under arrest.[2] A search of defendant's person uncovered in his pants pocket four more balloons containing a similar white powder later shown to be heroin. Narcotics supplies and paraphernalia used for diluting and packaging heroin, some of which materials contained residues of heroin, were found in the apartment. Defendant's wallet, found in the pocket of a coat hanging in a closet, contained the marked currency earlier supplied to Estrada. Deputy Penland observed puncture wounds, 24 hours to two weeks old, near the inner elbows of defendant's arms.
The deputies were not armed with a search or arrest warrant at the time of their entry into the apartment. [1] However the record clearly shows that Estrada was a reliable informant and that the information obtained from him by the *22 deputies constituted reasonable cause to make an arrest and search without a warrant. (People v. Prewitt (1959) 52 Cal.2d 330, 337 [340 P.2d 1]; Willson v. Superior Court (1956) 46 Cal.2d 291, 294-295 [294 P.2d 36]; People v. Boyles (1955) 45 Cal.2d 652, 656 [290 P.2d 535].) Defendant's contention that there was no probable cause for his arrest and for the subsequent search of his person and premises must therefore fall.
He further contends, however, that the trial court committed prejudicial error in admitting in evidence the heroin and certain narcotics paraphernalia since such evidence was obtained as the result of an unlawful entry by the deputies who failed to comply with the provisions of Penal Code section 844. That section provides: "To make an arrest, a private person, if the offense be a felony, and in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."
At the outset of our examination of this contention we are met with the fact that defendant failed to object to the admission of the subject evidence on the ground which he now advances.[3] [2] It is the general rule, of course, that questions relating to the admissibility of evidence will not be reviewed on appeal absent a specific and timely objection at trial on the ground sought to be urged on appeal. (People v. Robinson (1965) 62 Cal.2d 889, 894 [44 Cal. Rptr. 762, 402 P.2d 834]; People v. Rojas (1961) 55 Cal.2d 252, 260 [10 Cal. Rptr. 465, 358 P.2d 921, 85 A.L.R.2d 252]; see generally Witkin, Cal. Evidence (2d ed. 1966), § 1285, p. 1188.)[4] [3] Defendant urges, however, that that rule should be held inapplicable to the instant case because an objection on the ground of noncompliance with section 844 would have been wholly without support in the law as it stood at the time of trial. Reference is made to the fact that People v. Gastelo (1967) 67 Cal.2d 586 [63 Cal. Rptr. 10, 432 P.2d 706], upon which defendant bases his contention on appeal, was not yet decided at the time of trial, and he urges that that case represents *23 a change in the law so significant as to excuse his failure to object at trial.
In other instances we have excused a failure to object where to require defense counsel to raise an objection "would place an unreasonable burden on defendants to anticipate unforeseen changes in the law and encourage fruitless objections in other situations where defendants might hope that an established rule of evidence would be changed on appeal." (People v. Kitchens (1956) 46 Cal.2d 260, 263 [294 P.2d 17]; see also People v. Hillery (1965) 62 Cal.2d 692, 711-712 [44 Cal. Rptr. 30, 401 P.2d 382].) In Kitchens the failure to raise a timely objection was excused because that case was tried before our decision in People v. Cahan (1955) 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513], at a time when the trial court was bound by earlier decisions to the effect that illegally obtained evidence was nevertheless admissible. It was deemed that only in trials commencing after Cahan could defense counsel have reasonably been expected to object to the receipt of such evidence, and his failure to do so was excused in Kitchens.
The crucial question confronting us in the case at bench is whether or not the rule announced in Gastelo, the content of which we examine below, represented such a substantial change in the former rule as to excuse an objection anticipating that decision. We are guided in this inquiry not by metaphysical considerations as to what the law "was" preceding Gastelo, but by practical considerations as to what competent and knowledgeable members of the legal profession should reasonably have concluded the law to be. This is the approach undertaken by us in Kitchens, where we emphasized the reasonable expectations of counsel at the time of trial: "... in view of the decisions of this court prior to People v. Cahan, supra, an objection would have been futile, and `the law neither does nor requires idle acts.' (Civ. Code, § 3532.)" (46 Cal.2d at p. 263.)
We therefore undertake to determine the state of the law as it would have appeared to competent and knowledgeable counsel at the time of the trial of the instant case which took place prior to our decision in Gastelo.
In 1956 we held in the leading case of People v. Maddox (1956) 46 Cal.2d 301 [294 P.2d 6], that the requirements of section 844 are "limited by the common law rules that compliance is not required if the officer's peril would have been increased or the arrest frustrated had he demanded entrance *24 and stated his purpose." (46 Cal.2d at p. 306.) In that case police officers, having probable cause to believe that the defendant was selling narcotics, went to his residence and knocked on the door. One of the officers heard a male voice say "Wait a minute" and also heard the sound of retreating footsteps. He kicked the door open and apprehended the defendant. On the basis of these circumstances we concluded that "When, as in this case, [the officer] has reasonable grounds to believe a felony is being committed and hears retreating footsteps, the conclusion that his peril would be increased or that the felon would escape if he demanded entrance and explained his purpose, is not unreasonable." (46 Cal.2d at p. 306.)
Subsequent pre-Gastelo decisions of this court which applied the so-called "Maddox exceptions" invariably involved specific factual elements comparable to the "retreating footsteps" in Maddox  that is, circumstances peculiar to the entry in question by which the officers could reasonably conclude that announcement would increase their own peril or frustrate the arrest. We summarized some of these decisions in Gastelo as follows: "... in People v. Carrillo (1966) 64 Cal.2d 387 [50 Cal. Rptr. 185, 412 P.2d 377], entry followed a knock and observation of suspicious movements. In People v. Smith (1966) 63 Cal.2d 779 [48 Cal. Rptr. 382, 409 P.2d 222], and People v. Gilbert (1965) 63 Cal.2d 690 [47 Cal. Rptr. 909, 408 P.2d 365], the officers were in fresh pursuit of gunwielding defendants. Similarly, in People v. Hammond (1960) 54 Cal.2d 846 [9 Cal. Rptr. 233, 357 P.2d 289], officers had cause to believe defendant had a gun and was under the influence of heroin at the time of arrest." (People v. Gastelo, supra, 67 Cal.2d at p. 588.)
However, numerous decisions of the Courts of Appeal, some of which were filed within months of the Maddox decision, undertook to excuse compliance with section 844 or its counterpart section 1531[5] in the absence of such or similar circumstances. Moreover, in a number of these cases the defendant's petition for a hearing in this court was denied.
The first of these cases was People v. King (1956) 140 Cal. App.2d 1 [294 P.2d 972]. There officers having reasonable cause to believe that the occupant of a certain residence was engaging in bookmaking went to the address in question. An *25 officer knocked on the door and identified himself. After waiting about two minutes and receiving no response, he made a forced entry into the premises. On appeal the court concluded that section 844 was not complied with since the record failed to disclose whether the officer "demanded admittance and explained the purpose for which admittance is desired" (§ 844, cf. People v. Cockrell (1965) 63 Cal.2d 659, 665-666 [47 Cal. Rptr. 788, 408 P.2d 116]; People v. Rosales (1968) 68 Cal.2d 299, 302 [66 Cal. Rptr. 1, 437 P.2d 489]), but held nevertheless that such compliance was excused under Maddox. No explanation for this holding was offered other than a long quotation from the Maddox opinion. This court denied a hearing less than two months after the Maddox decision.
A year later, in People v. Shelton (1957) 151 Cal. App.2d 587 [311 P.2d 859], a rationale for King and similar cases was articulated. There officers again went to the residence of one whom they reasonably believed to be engaging in bookmaking. After ringing the doorbell and waiting "for one-half minute," they forced the door with a sledgehammer. The court found that compliance with section 844 was excused under Maddox: "In view of the case with which guilty persons may destroy records of bets (as appellant in fact was doing when the officers forced an entry into his home) we cannot say that the officers' conduct in this case was not justified...." (151 Cal. App.2d at p. 588.) Similarly, in People v. Russell (1963) 223 Cal. App.2d 733 [36 Cal. Rptr. 27], the court justified the officers' noncompliance with section 844 solely on the basis of the kind of criminal activity in which they had reasonable cause to believe defendant was engaging: "Experienced in bookmaking activities, familiar with the manner in which they are carried on and the habits of those so engaged, and knowing the practices employed, the papers, apparatus and paraphernalia used, and the ease with which records of bets can be destroyed, [the officer] was justified in assuming that if he first informed the occupant of his presence and demanded admission to the premises, the latter might become alarmed and break the telephone connection, attempt to destroy betting markers and other incriminating evidence, and try to leave." (223 Cal. App.2d at p. 737.) This court denied a hearing.
The above rationale, first employed in bookmaking cases, was also applied to narcotics cases. (See People v. Sayles (1956) 140 Cal. App.2d 657 [295 P.2d 579]; People v. Morris (1958) 157 Cal. App.2d 81 [320 P.2d 67]; People v. Miller *26 (1958) 162 Cal. App.2d 96 [328 P.2d 506]; People v. Covan (1960) 178 Cal. App.2d 416 [2 Cal. Rptr. 811] [hearing denied]; People v. Montano (1960) 184 Cal. App.2d 199 [7 Cal. Rptr. 307]; People v. Gauthier (1962) 205 Cal. App.2d 419 [22 Cal. Rptr. 888] [hearing denied]; People v. Guthaus (1962) 208 Cal. App.2d 785 [25 Cal. Rptr. 735] [hearing denied]; People v. Villanueva (1963) 220 Cal. App.2d 443 [33 Cal. Rptr. 811] [hearing denied]; People v. Samuels (1964) 229 Cal. App.2d 351 [40 Cal. Rptr. 290] [hearing denied]; People v. Holloway (1964) 230 Cal. App.2d 834 [41 Cal. Rptr. 325]; People v. Manriquez (1965) 231 Cal. App.2d 725 [42 Cal. Rptr. 157]; People v. Aguilar (1965) 232 Cal. App.2d 173 [42 Cal. Rptr. 666]; People v. King (1965) 234 Cal. App.2d 423 [44 Cal. Rptr. 500] [hearing denied]; People v. La Peluso (1966) 239 Cal. App.2d 715 [49 Cal. Rptr. 85] [hearing denied].) Its first articulation in the context of narcotics came in the case of People v. Guthaus, supra, 208 Cal. App.2d 785, where the Court of Appeal, holding that an unannounced entry was justified under the "Maddox exceptions" to section 844, stated: "In this case the sheriff's deputies had reasonable cause to believe that a felony was being committed in the house, to wit, the possession and sale of narcotics. As experienced members of a narcotics squad, they were entitled to conclude in good faith that if they informed the defendant of their presence and demanded admission before breaking into the premises, he might attempt to dispose of the narcotics then in his possession." (208 Cal. App.2d at p. 791.) The defendant's petition for a hearing was denied by this court.
Similar statements of the rationale in question were expressed in later narcotics cases (see People v. Samuels, supra, 229 Cal. App.2d 351, 361 [hearing denied]; People v. Holloway, supra, 230 Cal. App.2d 834, 840), and its ultimate formulation was advanced in People v. Manriquez, supra, 231 Cal. App.2d 725, a case whose facts are strikingly similar to those in the case now before us. There police officers, suspecting the defendant of dealing in narcotics, provided an informer with money, having recorded the serial numbers thereof, and sent him to the defendant's house in order to make a purchase. When the informer returned without the money and with a quantity of heroin, the officers made an unannounced forcible entry into the house. At trial one of the officers testified as follows relative to his reasons for the mode of entry: "It has been my experience that people involved in narcotic trafficking will always attempt to dispose of evidence, either by flushing or some other disposal in the house." (231 *27 Cal. App.2d at p. 728.) The Court of Appeal, holding that noncompliance with section 844 was excused, stated: "We need not here determine how far in nonnarcotic cases, a general course of conduct on the part of most law violators could be used as an excuse for ignoring the statutory mandate expressed in section 844. At least in cases of suspected narcotic violations, the evidence, in the form of narcotics or marked money, is of a kind susceptible of destruction in a matter of seconds. We think that where, as here, the officers are dealing with an offense committed within minutes of entry, their belief in the necessity for immediate entry without warning  a belief accepted and concurred in by the trial court  cannot be disregarded on appeal. As was pointed out in People v. Maddox (1956) 46 Cal.2d 301, 306 [294 P.2d 6], the rule requiring warning is statutory and not constitutional; it may and should yield to the practical necessities of reasonable law enforcement activity." (231 Cal. App.2d at pp. 728-729.)
From the foregoing summary it is manifest that, prior to the Gastelo case, competent and knowledgeable defense counsel concerned with preventing the admission of evidence obtained by means of an entry which failed to comply with the provisions of section 844 or section 1531 could only have concluded that compliance with these sections was excused by law without any showing of particular exigency whenever the nature of the evidence sought was such as to facilitate easy disposal.[6] In Gastelo, however, we held precisely to the contrary: "... we have excused compliance with the statute in accordance with established common law exceptions to the notice and demand requirements on the basis of the specific facts involved. No such basis exists for nullifying the statute in all narcotics cases, and, by logical extension, in all other cases involving easily disposable evidence." (67 Cal.2d at p. 588.)
We do not believe that we can demand of defendants or their counsel the prescience necessary to anticipate that a rule so deeply rooted as that whose history we have outlined above would be suddenly extirpated. "A contrary holding would place an unreasonable burden on defendants to anticipate *28 unforeseen changes in the law and encourage fruitless objections in other situations where defendants might hope that an established rule of evidence would be changed on appeal." (People v. Kitchens, supra, 46 Cal.2d 260, 263.) We therefore hold that defendant is not precluded from raising for the first time on this appeal his objection based upon section 844 of the Penal Code.[7]
[4a] We turn to the merits of defendant's contention. First, it clearly appears that the forced entry here in question was effected absent compliance with the provisions of section 844, for the officers made no efforts of any kind to announce their presence prior to entry. (Cf. People v. Cockrell, supra, 63 Cal.2d 659, 665-666.) Thus, the sole questions before us is whether such compliance was excused under the common law exceptions to the rule of announcement which were first set forth by this court in Maddox.
According to the testimony of Deputy Trujillo, which is set forth in relevant part in footnote 2, ante, there were two reasons for the manner of entry undertaken. The first of these was the officer's general experience relative to the propensity of narcotics violators to dispose of evidence upon being informed of the presence of police. The second was the officer's knowledge of defendant's particular propensity to attempt escape and his motive for such an attempt in the circumstances. We consider each of these reasons in order.
[5] Our decision in People v. Gastelo, supra, 67 Cal.2d 586, clearly forecloses the propriety of noncompliance with section 844 or its counterpart section 1531 when such noncompliance is based solely upon an officer's general experience relative to the disposability of the kind of evidence sought and the propensity of offenders to effect disposal. "Just as the police must have sufficiently particular reason to enter at all, so must they have some particular reason to enter in the manner chosen." (67 Cal.2d at p. 589.) Moreover, the particular reason for entry must be based upon the specific facts of the case. Thus, where officers have obtained particular information which leads them to reasonably conclude that the *29 occupants of an apartment or residence have specifically resolved to effect disposal in the event of police intrusion or have made specific preparations in that regard (see People v. Barnett (1958) 156 Cal. App.2d 803, 805 [320 P.2d 128]; People v. Steinberg (1957) 148 Cal. App.2d 855, 857 [307 P.2d 634]), or when officers prior to entry are able to detect activity from within which leads them to reasonably conclude that the occupants are then engaged in the destruction or concealment of evidence (see People v. Carrillo, supra, 64 Cal.2d 387; People v. Maddox, supra, 46 Cal.2d 301; People v. Morales (1968) 259 Cal. App.2d 290 [66 Cal. Rptr. 234]; People v. Satterfield (1967) 252 Cal. App.2d 270 [60 Cal. Rptr. 733]; People v. Manning (1966) 239 Cal. App.2d 416 [49 Cal. Rptr. 433]; People v. Moore (1956) 140 Cal. App.2d 870 [295 P.2d 969]), an unannounced entry may be justified. In these cases, however, compliance with the applicable knock-and-notice provision is excused not because of a blanket rule based on the type of crime involved but because the particular circumstances of the case give rise to a reasonable belief that immediate action is necessary to prevent the destruction of physical evidence.
[4b] In the instant case the record discloses no particular circumstances upon the basis of which the officers could have reasonably concluded that defendant harbored a present intention to dispose of evidence. Nor does it disclose any particular circumstances prior to the actual entry which would have supported a reasonable conclusion that defendant was then engaged in the destruction or concealment of evidence. Therefore the unannounced entry in violation of section 844 may not be excused on these grounds.
[6] In reaching the above conclusion we have not disregarded the suggestion of amicus curiae that compliance with knock-and-notice provisions should be excused when an officer has personal knowledge that a felony is being committed in an apartment or residence contemporaneously with his entry. Aside from the difficulties inherent in determinations as to what constitutes "personal knowledge" on the part of the officer, it is clear that his knowledge or belief that a felony is being committed relates to probable cause for arrest  not to the imminence of disposal of evidence. As we stated in Gastelo and have reiterated above: "Just as the police must have sufficiently particular reason to enter at all, so must they have some particular reason to enter in the manner chosen." (67 *30 Cal.2d at p. 589.) The reason for entry without announcement must be additional to the basic reason for entry.[8]
[4c] The second reason given by Deputy Trujillo for the unannounced entry into defendant's apartment was that the officer had arrested defendant before and was of the opinion, based upon such past experience, that defendant might try to escape and thereby frustrate the arrest. It is urged that defendant's prior arrest on February 8 and the trickery to which he then resorted in order to obtain his release supported this opinion and provided a motive for escape. We do not believe, however, that these factors were sufficient to give rise to a reasonable belief that an unannounced forcible entry was necessary to prevent escape. Defendant had remained in the area following the events of February 8 and indeed was in his home during all the time it was under surveillance. So far as the record shows, Estrada had not observed anything during his visit to the apartment which even suggested that defendant was either alerted to make an escape or to present any physical threat to the officers. Finally, there were four deputies at the premises at the time of the midday entry, more than adequate to cope with defendant who, on February 8, had exhibited no violent reaction to his arrest on that date. (See People v. Rosales, supra, 68 Cal.2d 299, 305.)
We conclude that the instant case is wholly devoid of circumstances sufficient to excuse the officer's noncompliance with the provisions of section 844 of the Penal Code, that their entry was therefore unlawful, and that the illegally obtained evidence, which was crucial to the conviction, should therefore have been excluded.
The order denying defendant's motion for a new trial is reversed.
Traynor, C.J., Peters, J., Tobriner, J., Mosk, J., and Burke, J., concurred.
McCOMB, J.
I dissent. I would affirm the order.
Respondent's petition for a rehearing was denied May 21, 1969. McComb, J., was of the opinion that the petition should be granted.
NOTES
[1] Defendant's notice of appeal was filed prior to the 1968 amendment to section 1237 of the Penal Code which provides in relevant part that "The commitment of a defendant for narcotics addiction shall be deemed to be a final judgment within the meaning of this section 90 days after such commitment." The former section 1237, as amended in 1965, provided that an appeal might be taken "From an order denying a motion for a new trial, in cases where the defendant is committed before final judgment for ... narcotics addiction."
[2] At trial Deputy Trujillo gave the following testimony relative to the manner of entry: "Q. [by the prosecutor] Why is it that you didn't announce that you were police officers before you went in? A. Because it's been our experience that when making an arrest of that type, that when you announce yourself, there is usually a rush to the bathroom and there is a flushing of narcotics  anyway, the person will try to get rid of narcotics in one manner or another. Q. Did you have any knowledge of the defendant's background so far as any possible use of violence is concerned? A. I have arrested the defendant before; as to violence, maybe an escape, but that's all."
[3] At trial defendant unsuccessfully moved to suppress the subject evidence on the grounds that there was no probable cause to arrest and no warrants had been obtained. The ground of noncompliance with section 844 was not mentioned.
[4] See also Evidence Code section 353, in effect January 1, 1967, after the trial of this case.
[5] Section 1531 provides: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance."
[6] Although in most cases employing the above rationale the evidence sought was either narcotics or bookmaking paraphernalia, at least one decision indicated a broader application extending to other types of easily disposable evidence. (People v. Phillips (1966) 240 Cal. App.2d 197, 203 [49 Cal. Rptr. 480], reversed on other grounds, 386 U.S. 212 [17 L.Ed.2d 870 87 S.Ct. 977].)
[7] In People v. Flores (1968) 68 Cal.2d 563 [68 Cal. Rptr. 161, 440 P.2d 233], we held that the defendant was precluded by his failure to object at trial from raising on appeal the issue of noncompliance with section 1531 upon execution of the search warrant therein. The instant opinion reflects our reconsideration of this conclusion upon further extensive reflection; People v. Flores is overruled to the extent it is inconsistent herewith. People v. De Leon (1968) 260 Cal. App.2d 143 [67 Cal. Rptr. 45], and People v. Perez (1968) 267 Cal. App.2d 275 [72 Cal. Rptr. 746], are disapproved to the same extent.
[8] It has come to our attention that in at least two recent cases the Court of Appeal has interpreted our Gastelo decision in a manner inconsistent with the language and clear implications of that decision. (People v. Yeoman (1968) 261 Cal. App.2d 338 [67 Cal. Rptr. 869]; People v. Camerano (1968) 260 Cal. App.2d 861 [67 Cal. Rptr. 446].) Those cases are disapproved to the extent of such inconsistency.