[Crim. No. 375.   Fifth Dist.   Jan. 31, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. RONALD BRUCE TITTLE et al., Defendants and Appellants.

Bert M. Carner, Jr., and Charles K. Brunn, under appointment by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, Daniel J. Kremer, Deputy Attorney General, and Alexander M. Wolfe, District Attorney, for Plaintiff and Respondent.

CONLEY, P. J.—The defendants, Ronald Bruce Tittle and George Richard Ellsworth III were convicted by a jury of the crime of burglary. They appealed from the convictions on the ground, as they claim, that the evidence was insufficient. No argument is made that the trial court erred in any ruling on the evidence or in giving instructions.

As so frequently happens in proof of a crime of stealth like burglary, the conviction depends on circumstantial evidence. (*People* v. *Jordan*, 204 Cal.App.2d 782, 786-787 [22 Cal.Rptr. 731]; *People* v. *Huber*, 225 Cal.App.2d 536, 541 [37 Cal.Rptr. 512].) That in itself is no valid objection to a conviction.

It must be remembered in connection with the appeal that the appellate court is not the trier of fact and does not have to be convinced of a defendant's guilt to a moral certainty and beyond all reasonable doubt. As is said in *People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778]: "The rule applicable where there is evidence, circumstantial or otherwise [is] . . . as follows: The court on appeal 'will not attempt to de-

termine the weight of the evidence, but will decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt. For it is the function of the jury in the first instance, and of the trial court after verdict, to determine what facts are established by the evidence, and before the verdict of the jury . . . can be set aside on appeal upon the ground, of insufficiency of the evidence,' it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. . . . We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.' If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury.''

Insofar as proof of the corpus delicti is concerned, there cannot be the slightest doubt that the burglary was committed by someone. (*People* v. *Jordan, supra,* 204 Cal.App.2d 782.) The burglarized house was the residence of Harry and Flora Burkett, located at 1505 Florida Avenue in Modesto. The Burketts were absent from home at Thanksgiving time (November 24, 1966). A window near the back door of the residence was broken, and a long list of personal property was stolen from the residence and from the neighboring garage for which a key had been left in the kitchen of the home. While the owners of the house had been absent for a short time, their daughter, Vernal Oliphant, visited it every day and the time of the burglary was thus fixed grossly at sometime after one of her visits, as between 11 a.m. on November 23 and 8:30 a.m. on November 24, when Officer Stewart arrived at the residence. The appellants contend that the circumstantial evidence in the case, which they denominate as a ''mass of evidence,'' is so weak and inconclusive (*People* v. *Hall,* 62 Cal.2d 104, 112 [41 Cal.Rptr. 284, 396 P.2d 700]; Witkin, Cal. Criminal Procedure (1954), § 685, p. 669) that a jury could not possibly have been convinced of their guilt beyond a reasonable doubt. We do not view the record in the same light; on the contrary, it seems to us that, as in a jig-saw puzzle, when the various pieces are put together they present convincing proof of the criminal responsibility of the two defendants.

The principal items of evidence connecting Tittle and Ellsworth with the offense consist of the facts proven in connection with the approach of the burglars to the scene of the crime. The house in question is in a relatively rural section of the City of Modesto set off some distance from other homes and with some bare land and a family orchard located in connection with it. On the night in question, it had been raining sporadically, and there was copious mud in the vicinity which yielded clear footprints. The boots of the defendant Tittle and the shoes of the defendant Ellsworth were in the possession of the police and yielded clear evidence with respect to footprints in the neighboring mud. These prints were in two distinct lines going to and coming from the house in question and showing that two burglars had been present, one of whom wore boots comparing favorably with the boots of Tittle, and the other shoes, which again were consistent with the shoes worn that night by Ellsworth. Perhaps most significant of all, some of the footprints showed that, in connection with the boots, there was imprinted in the mud the rather unusual tag which actually was present on Tittle's boots showing the words "Biltrite," "Neuron Crepe," and "Made in U.S.A." No one possessing a fair state of mind, when advised of the other factors discussed herein, could well escape the conclusion that it was Tittle and Ellsworth who had left the roadway and entered the house and garage in question. It was necessarily conceded that Tittle and Ellsworth had been in the general vicinity in Tittle's automobile at the time of the burglary, although no one saw them in the immediate neighborhood of the Burkett house.

There was further extensive evidence by a competent criminalist of the State of California that soil samples taken from the inside of Tittle's automobile, from a flashlight in that car, from the steps of Tittle's home after he had returned there, from the boots and shoes worn by Tittle and Ellsworth, were entirely consistent with the soil in the area of the Burkett home; these samples looked alike and had the same general composition, characteristics and structure. The flower bed at the rear of the house where the window was broken to permit entrance by the burglars contained some of the footprints presumably made by the boots and shoes above referred to.

Early on Thanksgiving morning, at about 5:50 a.m., Richard Fernandez of the Modesto Police Department, while patrolling his beat in a police car, observed a white Cadillac automobile on College Avenue just above Stoddard in Modesto

some 15 blocks from the scene of the burglary. The Cadillac turned left on Alice Street, right on Olive, then made a left turn on Needham to Orange, then a left turn on Orange back to Alice; the Cadillac was followed by the officer; it was going at about 40 miles an hour. While Fernandez lost sight of the other car several times, he did follow it generally, and regained sight of the defendant's automobile on Virginia and stopped it at Stoddard and Orange. Tittle was driving and Ellsworth was in the right front seat. Tittle gave the officer permission to search the car; Fernandez found a ''Sunpower'' 6-volt battery with a Long's Drug Store price tag affixed to it. The poles were somewhat scraped as though it had been mounted in a car. The burglars had stolen a ''Sunpower'' battery, bought at Long's, from the automobile in the Burkett garage. There was also a massage pillow or mattress in a box approximately 14 by 12 inches and about 2 inches deep; the box was primarily white with blue about the sides and across the top.

Officer Fernandez noted that the shoes worn by Ellsworth and the boots of Tittle were muddy and that there was mud on the car floor and on the battery. As Fernandez had not as yet received word that there had been a burglary, he allowed Tittle to proceed on his way.

As noted, there was a general pursuit of the white Cadillac by the police officer. This may well explain the further fact that at about 7 a.m. on the same morning a resident on Orange Street, along which the Cadillac had run, found a Burkett pillow case, which had been stolen from the Burkett house, about 6 or 7 feet from the curb line, and also a series of articles of personal property which, apparently, had been in the pillow case, and which had been stolen from the Burketts, including a sleeping pill prescription with Mrs. Burkett's name on it. Someone had thrown the pillow case with its contents out of the window. On November 29, a .38 Colt revolver, which had been stolen from the Burkett house, was found about 8 feet beyond the curb under a bush in a vacant lot between Hackberry and Virginia Streets; this location was consistent with the course the defendants had taken during the pseudo-pursuit by the police officer. The revolver was loaded with flat-nosed bullets or ''wad cutters'' (also stolen from the Burketts), which it had not contained when previously located in a drawer near the bed of Mr. Burkett; somebody had loaded the revolver; this operation done by a burglar while on a felonious mission is equivalent to ''arming himself.''

The white Cadillac, it turned out, was driven to his mother's house by Tittle. In the meantime, the police department, tracing the source of the burglary through the name of Mrs. Burkett on the medicine bottle above-mentioned, sent a police officer to 1505 Florida Avenue. He saw the broken window, looked through the back door, and saw the evidence of the ransacking of the house where articles of personal property were strewn about and muddy footprints observable. The department then sent Officers Grom, Fernandez and Semus to the home of Tittle's mother which she willingly permitted them to enter. Tittle, apparently, had been asleep on a couch in the living room. The officers asked him for the boots which he had worn. Tittle first surmised that a brother had used them to go pheasant hunting. Later, he found that the brother and his wife were asleep in one of the bedrooms and he then purported in a suspicious manner to help the officers locate the boots if they were in the house. They were about to give up the search when one of the policemen discovered the boots in the living room near the couch covered by a corduroy coat. No doubt the jury was impressed by the fact that it was most peculiar that Tittle had forgotten that he had taken his boots off before lying down on the couch, and that they were apparently hidden by an article of clothing. These were the boots that matched the footprints at the Burkett house.

The disappearance of the battery already referred to and of the massage mattress is most significant. Neither of these articles of personal property was ever recovered by the police. The defendants claimed that the battery had been removed on the previous day from a car of Tittle when Ellsworth's battery went dead. The battery, so the defendants said, was carried all night in Tittle's car. It was observed by Officer Fernandez, as already stated, when he first stopped the defendants. It is claimed that it was left with an acquaintance of Ellsworth on Thanksgiving morning, although it could not be used by this acquaintance, but it completely disappeared and was never afterwards in the hands of the police or the district attorney. Similarly, the massage pillow or mattress also disappeared. It was traced into the Tittle home, but it was not produced. The timely acquisition of these two articles by the police department would have established conclusively whether or not they had been stolen from the Burkett home. With their disappearance, important items of physical proof of guilt were eliminated from a conclusive standpoint. However, there was enough

similarity between those two articles and the articles stolen by the burglars to afford the jury inferential evidence that part of the loot from the burglarized home was in the hands of the defendants shortly after the crime was committed.

There was also questionable evidence by the defendants of an all-night journey by car to Sonora, containing contradictions which cast doubt on that part of the story told by the defendants.

The jury found that the defendants were guilty of burglary of the first degree. Section 460, subdivision 1, of the Penal Code provides as follows: ''§ 460. 1. Every burglary of an inhabited dwelling house, trailer coach as defined by the Vehicle Code, or building committed in the nighttime, and every burglary, whether in the daytime or nighttime, committed by a person armed with a deadly weapon, or who while in the commission of such burglary arms himself with a deadly weapon, or who while in the commission of such burglary assaults any person, is burglary of the first degree.'' We have no hesitation in affirming this finding.

The Burkett house was an ''inhabited dwelling house,'' although the owner and his wife were temporarily absent. (*People* v. *Loggins*, 132 Cal.App.2d 736 [282 P.2d 961]; *People* v. *Allard*, 99 Cal.App. 591 [279 P. 182]; *People* v. *Stewart*, 113 Cal.App.2d 687 [248 P.2d 768]; *People* v. *Hann*, 104 Cal.App. 492 [285 P. 1070].) And, the burglary, if committed by these defendants, was in the nighttime inasmuch as the defendants themselves accounted for their activities in the late afternoon of November 23 and the entry of the house took place prior to the time when the police officer followed the white Cadillac; at that time it was dark as shown by the conceded evidence. It seems to us also to have been within the legitimate purview of the jury to conclude that the defendants armed themselves with the .38 caliber revolver which had been left unloaded in a drawer next to Mr. Burkett's bed, together with the evidence that it had been loaded by someone prior to throwing it away, presumably during the chase by Officer Fernandez. Unquestionably, the jury had the right to conclude that whoever burglarized the house and stole the pistol put bullets in it and thus armed himself.

In order not to subject the defendants to double punishment (*People* v. *Thomsen*, 239 Cal.App.2d 84, 97-98 [48 Cal.Rptr. 455]), any separate reference to the fact that defendants were armed with a deadly weapon should not be considered in ad-

dition to the degree of the offenses in fixing the length of their respective terms.

The judgments are affirmed.

Stone, J., and Gargano, J., concurred.