75 Cal.Rptr. 451]

[Crim. No. 536.    Fifth Dist.    Feb. 20, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. MERLE OLIVER NAUGHTON, Defendant and Appellant.

(1)

Russell E. Parsons for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Nelson P. Kempsky and Talmadge R. Jones, Deputy Attorneys General, for Plaintiff and Respondent.

CONLEY, P. J.—The defendant, Merle Oliver Naughton, was convicted by a jury of burglary in the second degree in that on December 27, 1966, he unlawfully entered a restaurant at 2790 South Railroad Avenue in Fresno with intent to commit theft therein. The defendant pleaded not guilty but admitted a prior conviction of forgery in the State of Iowa on or about the 19th day of February, 1938. In the instant case, his application for probation was denied, and he was sentenced to state's prison.

A comprehensive brief was filed by the appellant urging the following alleged grounds for a reversal of the judgment:

1) The evidence was insufficient to sustain a verdict of guilty;

2) The alleged failure of the arresting officers to comply with the requirements of section 1531 of the Penal Code made the entry into the Naughton apartment and defendant's subsequent arrest illegal;

3) The trial court erred in not striking the testimony of the officers as to the teletype abstract of the arrest warrant used

by them and requiring the production of the original warrant;

4) The criminal complaint was insufficient to support the issuance of the arrest warrant, and, hence, the arrest was illegal and all evidence obtained by the officers' search at the time of the arrest was illegally obtained and inadmissible;

5) As the car used by defendant was some distance from the apartment wherein Naughton was arrested, and its search was somewhat later, the search was illegal;

6) The identification of Naughton at the ''Four Wheels Restaurant'' in Fresno was insufficient to connect him with the alleged burglary of that building or to support the verdict of guilty.

Grounds numbered (1) and (6) may be considered together as they raise the same basic question. This contention by the appellant is supported principally by several specifications of evidence on behalf of the defendant which doubtless constituted a powerful jury argument in the first instance, but it has no merit on appeal. As a conviction has taken place, it is our duty to consider the facts proven on behalf of the state as paramount, and we shall of necessity adhere to that rule. The identification of the defendant, contrary to his own contention, was supported by ample substantial evidence and the jury so found.

Pauline Guthrie testified that she worked at the ''Four Wheels Restaurant'' at 2790 South Railroad Avenue in Fresno; on December 27, 1966, two men came in for coffee; one was a small fellow who was Latin or Oriental; one was tall and wore glasses. The smaller man came in first and sat down, and the taller one came in behind him. The shorter man paid for the coffee. The restaurant operator was doing the cooking that morning. After the two men left the restaurant, an alarm went off in the kitchen and the operator came running out to the front door. Miss Guthrie looked out of the window and saw the owner at the phone booth; he was writing something on a piece of paper as a car with the two men in it was leaving the driveway; she said that the taller fellow looked familiar in a picture that she was shown some three weeks later by a deputy from the sheriff's office and a representative of the telephone company; however, she did not positively identify him until she got into the courtroom on the morning of the trial; she then saw the tall man sitting in the courtroom, and she was more certain that he was one of the defendants who had come in for coffee on December 27.

Alfred Isaacson, the restaurant owner, testified that the telephone coin box was stolen from a telephone booth of the restaurant on December 27, 1966; that he had noticed two men, one of about medium height wearing a jacket and a polo shirt, and the other, a little taller, wearing a suit and tie, dark-rimmed glasses, and carrying an overcoat over his arm; Mr. Isaacson was in the restaurant kitchen facing the coffee shop; he could see through an open window that one of the men sat at the counter on the stool closest to the register, and the other patron first went to his right and then came back again. He asked the waitress which way the men's room was and she directed him in the other direction. He threw his coat over the stool next to the first man; the two had coffee; Mr. Isaacson identified the taller of the two men as being the defendant in the courtroom. He said then the alarm system buzzer sounded, and he moved from the kitchen to the front door of the restaurant; it took him about 20 seconds to do so. The telephone booths are located immediately to the left of the entrance to the restaurant and are part of the building; the booths have three walls and a finished redwood door with some glass in it to permit one to look into the booth. Mr. Isaacson observed the two men who had been seated in the coffee shop walking in a northerly direction about 10 or 15 feet from him. They walked farther on and got into a car; the shorter man had nothing in his hands, and he got in on the driver's side; the defendant had a coat wrapped around one of his hands; he opened a car door and threw the topcoat inside of the car; the car was backed out and it left the lot going north on Railroad Avenue. Mr. Isaacson tried to get the license number; 350 were the numbers at the end of the license, and the letters that preceded them were either TUM or TVM—he could not recall at the time of the trial. He went immediately to a telephone and called the telephone company and the sheriff's office, and people came from each to the scene of the crime. About three weeks after this Mr. Henton of the telephone company and Mr. Person of the sheriff's office came to the restaurant and showed Mr. Isaacson a book with photographs in it; in that book Mr. Isaacson pointed out defendant Naughton. His memory was that the car was sort of darkish with a little metallic finish, but he said he could not be sure about the colors.

Jack Henton from the Pacific Telephone Company testified that he had been a security agent working for that organization for five years; that he reported to the "Four Wheels

Cafe'' in the morning that the crime had occurred. He explained the coin box system for pay telephones; the upper housings of all have the same locks—the identical key will fit all the locks in all the telephone booths in all these upper housings—and there is a leveling hole in the mechanisms so that when the upper housing is removed one can look down through the hole to see if there is a coin receptacle in the lower housing. However, each lock in each lower housing in every telephone booth is different, and it takes a special key to open these lower housings; these keys are kept in San Francisco, and when the boxes are to be opened the keys are sent out on the route with the collector who also carries new receptacles. The coin boxes are collected, and the keys and the full receptacles are then sent back to San Francisco. So, the only time such keys are out is when the collector is working on the route. At the time of the incident, the telephone security agent did not have a key to the lower housing. However, when he looked through the leveling hole, he could see that there was no coin receptacle in one of the telephones—the one in connection with which the burglary had been effected.

Phillip McCoulloch testified that he lived in Visalia and was a coin collection supervisor for the Pacific Telephone and Telegraph Company; his district comprised Bakersfield, Tulare and Fresno; in the afternoon of January 17, 1967, in Bakersfield, he was going by the ''Ban Ducci Restaurant'' when he saw two men acting in an unusual manner at one of the restaurant pay telephone booths. What attracted his attention was that there was a piece of white paper on the right glass panel of the booth; the door was open. McCoulloch drove his car into the lot, parked it in front of the booth and watched the two men. One he thought was about 45 years old and 5 feet, 6 inches tall, with receding hair; he said he thought he might be Italian. He was inside the booth. The one on the outside of the booth was about 5 feet, 10 inches tall and about 35 years old; he had on a black raincoat, white shirt with no tie, black horn-rimmed glasses; his hair was receding. The man outside was standing in the doorway of the booth blocking McCoulloch's view. McCoulloch sat there as if he were waiting to use the telephone, and the man standing outside acted very nervously and kept looking at him. McCoulloch was driving a rented car—not a regular telephone company automobile with an emblem painted on it. Then, the two men left the booth and walked around the side of the restaurant to the back parking lot. McCoulloch went over to

the telephone and checked to see if there was a receptacle in the lower housing. He used a leveling tool; it is a piece of thin wire that is put in the lower part of the instrument. ''There is a drain hold in the bottom of the instrument, and I just put the leveling tool in the hole and I could hear that the receptacle was still there.'' Then, he got back in his car and drove it around the other side of the restaurant to the back parking lot. There he saw the two men in a car starting to drive off; the shorter man was operating the car; it was a tan Oldsmobile, about a 1961 model, and the license number was TVM 350. They left the parking lot. McCoulloch went back to the telephone and called the office of the company's special agent in Fresno and reported what had happened to him. Soon after that McCoulloch returned to Henton's office in Fresno where he was shown 10 or 15 pictures, among which were photographs of the two people he had seen in Bakersfield. McCoulloch positively identified the defendant at the trial as the taller of the two men he had seen at the telephone booth at Bakersfield. On cross-examination, it was brought out that Mr. Naughton was in fact 51 years old, although he had been thought by McCoulloch to be about 35. There was no complaint filed against the defendant for the activity alleged on January 17, 1967, in Bakersfield.

There was ample proof of the identity of the defendant, notwithstanding the conflicting evidence produced by the defendant's witness, Phillip Banks, Jr., who said that he lived in Whittier; that he had known the defendant for about 20 years; that on the 26th of December and the 27th, he was with Naughton during certain parts of the day and, in connection with such matters, that Naughton could not have been in Fresno on the date of the burglary. If Banks was accurate and was telling the truth, the defendant could not have taken the coin box, but, obviously, the jury did not accept the testimony of Banks and believed the People's witnesses who made it evident that Naughton was present in Fresno at the critical time.

The same type of disposition is required with reference to appellant's argument that he could not have handled a heavy coin box, hidden by his overcoat. That is an argument for a jury at trial, and not for an appellate court after conviction. ·

The crime of burglary is a crime of stealth and is often proved by circumstantial evidence. (*People* v. *Jordan,* 204 Cal.App.2d 782, 786-787 [22 Cal.Rptr. 731] ; *People* v.

*Huber,* 225 Cal.App.2d 536, 541 [37 Cal.Rptr. 512].) (See also; this court's opinion in *People* v. *Nazaroff,* 266 Cal.App. 2d 229, 237-241 [72 Cal.Rptr. 58], and *People* v. *Tittle,* 258 Cal.App.2d 518 [65 Cal.Rptr. 576].)

■ *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778], correctly states, as quoted in *People* v. *Tittle, supra,* pages 519-520, that an appellate court: '' '. . . ''will not attempt to determine the weight of the evidence, but will decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt.'' ' ''

■ It is similarly established that each fact in a chain of circumstances need not be proved beyond a reasonable doubt. (*People* v. *Wong,* 245 Cal.App.2d 844, 850 [54 Cal.Rptr. 273].)

■ Appellant tries to explain all of the evidence found in his apartment, including counterfeit keys, sacks of small coins and tools, by arguing that these things could have come from Nevada slot machines, or that they could have been used to place telephone calls without cost, or that the coins came from a silver coin business of the defendant's or from his operation of a laundromat. However, it is impossible to ignore the things that were found in appellant's apartment without a clearer explanation than was offered at the trial.

■ Appellant's claim that his identification was not legitimately proven because photographs were shown to the essential witnesses before trial is answered by several recent cases from this court that this is acceptable procedure. The opinion in *People* v. *Laursen,* 264 Cal.App.2d 932, 945 [71 Cal. Rptr. 71], stated that this matter was recently discussed in a United States Supreme Court case, *Simmons* v. *United States,* 390 U.S. 377 [19 L.Ed.2d 1247, 88 S.Ct. 967]; the court concluded that it was unwilling to prohibit the employment of photographs for identification, and each case should be considered on its own facts. In the present case Miss Guthrie and Mr. Isaacson both made positive identifications in court, and there is no indication that there was any likelihood of a misidentification.

■ The second point urged by appellant for reversal is that the Los Angeles police officers did not comply with the requirements of section 1531 of the Penal Code when they made the entry into the Naughton apartment; that such entry was illegal and that because testimony concerning it was given the judgment must be reversed. Penal Code section 844

provides: "To make an arrest, a private person, if the offense be a felony, and in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

The record shows that when the police officers went to his apartment to arrest defendant by virtue of the teletype of a warrant which had been issued in Fresno, they knocked and then the door opened about a foot and one of the policemen asked in a loud voice if anybody was inside; he then yelled, "Police Officer. Is anybody inside?"—that not receiving any reply the officers stepped into the living room through the open door and again called out who and why they were there; appellant claims that this was as much a trespass as if the officers had unlocked or broken down the door and entered; that there was neither adequate notice of the officers' authority and purpose nor, after such notice, a refusal to admit the officers. The officers continued down the hallway to the bathroom where the door was closed, and when defendant stepped out, wrapped in a towel, an officer stated, "I am a police officer. Are you Merle Naughton?" Defendant nodded and quickly went into the bathroom and closed and locked the door; the officers then broke in the door and forced entry into the bathroom; a search followed. Appellant cites several cases in which the courts have held that failure to comply with the requirements of the code made reversals of convictions necessary. (See *People* v. *Arellano,* 239 Cal.App.2d 389 [48 Cal. Rptr. 686]; *People* v. *Hughes,* 240 Cal.App.2d 615 [49 Cal. Rptr. 767]; *People* v. *Gastelo,* 67 Cal.2d 586 [63 Cal.Rptr. 10, 432 P.2d 706].)

However, *People* v. *Taylor,* 266 Cal.App.2d 14, 17-18 [71 Cal.Rptr. 886], deals specifically with this question. In that opinion the court quoted from *People* v. *Rosales,* 68 Cal.2d 299 [66 Cal.Rptr. 1, 437 P.2d 489], wherein the Supreme Court said that there is a breaking under section 844 " 'at the very least' if there is an unannounced entry 'that would be considered breaking as that term is used in defining common-law burglary,' " and that " 'no more is needed "than the opening of a door or window, even if not locked, or not even latched. Pulling open a screen door held closed only by a spring is sufficient." . . .' " In the *Taylor* case the door was ajar as here, and the court held that the acts of the officers did not constitute a "breaking" in the concept of com-

mon law burglary; there an officer gave an ordinary knock on the door, which thereupon swung open without any other action on the part of the officers; neither of them even turned a door knob or exerted any other force upon the door, and nothing in the evidence showed that either officer could believe that the door would spring open in response to the knock; the court held that in common law it was not regarded as a breaking to enter through an open door, but force, no matter how slight, used to open, partially or wholly, a closed door was considered a breaking. The *Taylor* court (p. 18) concluded that the "swinging open of a door, upon being subjected only to a rapping of the kind that is a common prelude to a request for admission, is more analogous to the open-door cases than it is to the second category of cases above described" and that, even though the officers did not make the specific announcements prescribed by section 844 of the Penal Code, there was no breaking at common law and none in the case before the court. In the instant case, after knocking and before stepping inside, Officer Brown called through the open door not once but twice, "Police Officers. Is anyone inside?" In *People* v. *Marshall*, 69 Cal.2d 51, 55-56 [69 Cal.Rptr. 585, 442 P.2d 665], while the conviction was reversed on other grounds, the court did hold that the officers by "persistently knocking, demanding entry and identifying themselves for several minutes before picking the lock and entering," satisfied the notice requirements of code section 844.

When Naughton re-entered the bathroom, closed and locked the door and attempted to destroy the telephone box keys in his possession by flushing them down the toilet, the officers were justified in forcing open the bathroom door to prevent the defendant from destroying evidence. (See *People* v. *Perez*, 267 Cal.App.2d 275 [72 Cal.Rptr. 746].)

▮▮▮ Appellant complains as a third ground for reversal that the trial court erred in not striking testimony of the officers as to the teletype abstract of the arrest warrant and in failing to require the production of the original warrant as the best evidence; the arresting officers did not see the warrant of arrest except on the teletype abstract. Appellant relies upon *People* v. *Wohlleben*, 261 Cal.App.2d 461 [67 Cal. Rptr. 826], where a conviction was reversed because the prosecution had failed to produce the warrants after a proper objection but relied on the testimony of one of the arresting officers that he had seen telegraphic copies of the warrants, and the court said that as defendant had objected to the *com-*

*petency* of the prosecution's evidence of the warrants, the court was in error in not requiring that the original warrants be produced. The use of a telegraphic warrant is authorized by section 850 of the Penal Code. In the present case, appellant failed to raise an objection to the *competency* of proof of the warrant at trial. (See *People* v. *Stewart,* 189 Cal.App.2d 176, 179-180 [10 Cal.Rptr. 879]; 3 Cal.Jur.2d, Appeal and Error, § 140, p. 604, and *People* v. *Modell,* 143 Cal.App.2d 724, 730-731 [300 P.2d 204].) The record shows that appellant questioned only what the officer's partner said as hearsay, but there was no objection of any kind to the description of the teletype of the warrant made by the witness, Officer Brown. There was no question of its contents. (See also, Witkin, Cal. Evidence (2d ed. 1966) Documentary Evidence, § 688, p. 642.) Appellant is not entitled to make the current objection for the first time on appeal.

█ The fourth point attempted to be made by appellant is that the criminal complaint was insufficient to support the issuance of the arrest warrant. It is contended that the arrest was illegal and that, therefore, all evidence obtained during the search at the time of the arrest was improperly obtained and inadmissible. Although at one time the appellant stated that he would move to augment the record to include the complaint filed by the district attorney, citing *People* v. *Sesslin,* 68 Cal.2d 418 [67 Cal.Rptr. 409, 439 P.2d 321], for some reason unknown to us no such motion was made and the foundational facts for making the point are not before the court and are therefore not available to support the contention of the appellant.

█ As a fifth point, the appellant next contends that there should be a reversal because the automobile which was searched and concerning which evidence was admitted was at some distance from the apartment where Naughton was arrested, and the search took place on the same day but some minutes later than the arrest; it is urged that it was not an incident of the arrest and was, therefore, illegal. Defendant lived, and was arrested in apartment 31 of a large apartment house, and the automobile, registered in the name of a Mary Baker, was parked on the street at a short distance from the apartment but in front of the apartment house. The search disclosed about $1.00 in small coins, an Allen wrench and a black topcoat in the car, and still later a fingerprint of the defendant was identified; the appellant cites *Castaneda* v. *Superior Court,* 59 Cal.2d 439 [30 Cal.Rptr. 1, 380 P.2d 641],

*People* v. *Haven,* 59 Cal.2d 713 [31 Cal.Rptr. 47, 381 P.2d 927], and *Tompkins* v. *Superior Court,* 59 Cal.2d 65 [27 Cal. Rptr. 889, 378 P.2d 113].

The telegraphic warrant (Pen. Code, §§ 850 and 851) ordered the officers not only to arrest the appellant but to locate, search and impound the vehicle in question. The witness Officer Brown secured his information from official police files (*People* v. *Sanford,* 265 Cal.App.2d 960, 964 [71 Cal. Rptr. 790]); he testified that he observed the teletype and there was a request on the teletype that ''we attempt to locate and arrest Merle Oliver Naughton, and to locate and search and impound a 1961 Oldsmobile, tan in color, four-door, bearing license number TOM-VICTOR-MARY 350.''

Searches of a car generally contemporaneous with the arrest and parked in the vicinity of a defendant's place of apprehension have been upheld as incidental to the arrest. In *People* v. *Green,* 235 Cal.App.2d 506, 507-508 [45 Cal.Rptr. 371], there was an arrest in the parking lot of a Sears store and the search of a parked car, which was found on an A & P Market lot adjacent to Sears about a half hour later. *People* v. *Daily,* 157 Cal.App.2d 649, 653 [321 P.2d 469], approved the search of a car parked about 50 to 60 feet from the house where an arrest was made; *People* v. *Burke,* 208 Cal.App.2d 149, 154-158 [24 Cal.Rptr. 912], involved an arrest in a hotel room and the search of a car parked outside. In *People* v. *Burke,* 61 Cal.2d 575, 577-580 [39 Cal.Rptr. 531, 394 P.2d 67], a search of a car found nearby the place of arrest was held to be proper, except that a later search of the locked trunk without a warrant at the impound lot was too remote.

In appellant's three cases the facts must be distinguished. In the *Tompkins* case, *supra,* the defendant was arrested on a different street some distance away from the place of arrest, and the search was not contemporaneous; in the *Castaneda* case, *supra,* the search was made in a different city from that where the arrest took place, and in the *Haven* case, *supra,* the arrest on Army Street in San Francisco was followed by the search of the car on Mission Street a considerable distance away.

When the Los Angeles officers received the teletype concerning the warrant, an officer went to Van Nuys and found the described car parked at the east curb of Kester Street at the end of the apartment building at 4740 Kester. Then, that officer, with Special Agent Russell Dwy of the telephone company, went into the foyer of the apartment building and

found on the building directory the name of M. Naughton as occupant of apartment 31. Immediately after the arrest of defendant, the car specified in the teletype and parked outside was searched; defendant at that time had been arrested and was nearby in the police car; the vehicle was impounded, a hold was placed on it for the Fresno County sheriff's office, and it was photographed and dusted for latent fingerprints. The search of the car under the facts and the cited authorities was legal. (See *People* v. *Webb*, 66 Cal.2d 107, 115-118 [56 Cal.Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708]; and *People* v. *Robinson*, 62 Cal.2d 889 [44 Cal.Rptr. 762, 402 P.2d 834].)

The judgment is affirmed.

Stone, J., and Gargano, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 17, 1969.