Filed 2/5/24  P. v. Jhons CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C095989 |
| Plaintiff and Respondent, | (Super. Ct. No. STK-CR-FE-2018-0012897) |
| v. | |
| TYRISE JHONS, | |
| Defendant and Appellant. | |

After a jury found defendant Tyrise Jhons guilty of murder, attempted murder, and other crimes, the trial court sentenced him to state prison for an indeterminate term of 50 years to life.  On appeal, Jhons contends (1) there was insufficient evidence for his convictions, (2) the trial court made erroneous evidentiary rulings, and (3) trial counsel provided ineffective assistance.  We affirm.

1

BACKGROUND

One evening in September 2018, a man wearing red clothing tossed $100 bills in the air in front of a liquor store.  At first, it seemed the money was being given away but the man who threw the money asked everyone who picked up the money to return it and then became angry when he concluded he did not get it all back.  G.R. was an adolescent at the time and insisted he returned the money he had picked up, but the man did not believe him.  D.J. was another adolescent present at the liquor store at the time of the incident.

There was no dispute at trial that Jhons was the man in red clothing who tossed the money and demanded its return.  Nor was there any dispute that Jhons was accompanied that evening by his cousin Wilbert Rigmaden (also known as Malek or CTM).  What was disputed at trial was the identity of the person who, later that evening and from about 100 feet away, fired multiple .45-caliber bullets toward a group of people that included G.R., D.J., and Rigmaden.  Bullets struck G.R. and Rigmaden.  G.R. survived and Rigmaden died.

In the first trial, Jhons faced one count of murder and four counts of attempted murder.  Ultimately, the trial court granted Jhons's motion for acquittal on two of the attempted murder counts, and the jury was unable to reach a verdict on the two remaining counts of attempted murder (regarding G.R. and D.J.) and the murder count.

During the retrial, D.J. testified he did not remember who the shooter was and did not remember who he had identified as the shooter to police.  However, D.J. remembered talking to police about the shooting, remembered being shown a six-pack photographic lineup, and remembered picking out of that lineup the person he believed was the shooter.  Video evidence played for the jury established that in an interview about one month after the shooting, D.J. picked a photograph of Jhons from the six-pack photographic lineup.  In that interview, D.J. told police the man who fired shots at the group that night was the

2

man who was throwing money earlier. D.J. could tell because the shooter was wearing the same red "bomber" jacket.

The jury also viewed a video of Jhons's statements to police after his arrest. In that video, Jhons said he had been hoping to talk with the police about Rigmaden's death to clear his name, insisted he was not at the scene of the shooting, and indicated that the last time he spoke to or saw Rigmaden was weeks before the shooting.

In closing argument, the prosecutor reminded the jurors that D.J. "clearly puts the shooter as being the same person who threw the money" and argued that Jhons's false statement to police that he had not seen Rigmaden in the weeks before the shooting showed Jhons was "aware of his guilt."

After the jury found Jhons guilty of the murder of Rigmaden, the attempted murders of G.R. and D.J., and other charges, the trial court sentenced him in March 2022 to a prison term of 50 years to life. Jhons timely appealed and filed his opening brief in April 2022. The matter was fully briefed in October 2023, and assigned to this panel shortly thereafter.

## DISCUSSION

## I

### *Sufficiency of the Evidence*

Jhons contends there was insufficient evidence to support his convictions.[1] We disagree.

#### A.     *Standard of Review*

Whether the prosecution relies on direct evidence or circumstantial evidence, we review a claim of insufficient evidence by viewing the record in the light most favorable

---

[1] Jhons's developed argument in his opening brief addresses only his murder and attempted murder convictions, and therein focuses only on the sufficiency of evidence regarding the identification of him. We will address those crimes. (*People v. Oates*

3

to the judgment below to determine whether it discloses substantial evidence—evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. We presume in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence. A conviction may not be reversed simply because the circumstances might also reasonably be reconciled with a finding contrary to the one the jury made. We do not reweigh evidence or reevaluate a witness's credibility, as resolution of conflicts and inconsistencies in the testimony is the exclusive province of the jury. And unless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction. (*People v. Ramirez* (2022) 13 Cal.5th 997, 1117-1118.)

"If the defendant fails to present us with all the relevant evidence, or fails to present that evidence in the light most favorable to the People, then he cannot carry his burden of showing the evidence was insufficient because support for the jury's verdict may lie in the evidence he ignores." (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1574.)

B.     *Analysis*

As noted above, D.J.'s videotaped interview with the police was shown to the jury, and in that video D.J. told police the man who fired shots at the group that night was the man who was throwing money earlier. D.J. could tell because the shooter was wearing the same red "bomber" jacket. It was undisputed that Jhons was the man in red clothing throwing money earlier that evening and that Rigmaden was with him.

In a different video, the jury saw Jhons reiterate to the police that (1) in statements to Rigmaden's family he denied seeing his cousin the day of the shooting, (2) he was not

_____

(2004) 32 Cal.4th 1048, 1068, fn. 10 [it is not our role to develop argument for an appellant]; *People v. Stanley* (1995) 10 Cal.4th 764, 793 [the absence of cogent legal argument allows us to treat a claim as forfeited].)

4

at the location of the shooting on the day in question, and (3) he had not seen his cousin for weeks before the shooting.  As the prosecution argued to the jury, these statements permitted the jury to infer that Jhons was purposefully attempting to conceal from officers his presence or participation in the money-throwing incident that occurred on the evening of the shooting, and that he did so because he was aware of his own guilt.  (See *People v. Dennis* (1998) 17 Cal.4th 468, 522 [prosecutors "have wide latitude to discuss and draw inferences from the evidence at trial," and whether "the inferences the prosecutor draws are reasonable is for the jury to decide"]; *People v. Holloway* (2004) 33 Cal.4th 96, 142 ["The inference of consciousness of guilt from . . . fabrication . . . of evidence is one supported by common sense"]; *People v. Kimble* (1988) 44 Cal.3d 480, 496-498 [" 'fabrications as to the facts of the case are treated as tending to show consciousness of guilt' "].)  Jhons ignores these arguably false statements in his opening brief.  In doing so, "he cannot carry his burden of showing the evidence was insufficient because support for the jury's verdict may lie in the evidence he ignores.  [¶]  Such is often the case in criminal appeals, and such is the case here."  (*People v. Sanghera*, *supra*, 139 Cal.App.4th at p. 1574.)

Because it was undisputed Jhons was the man in red clothing throwing money earlier that evening, D.J.'s identification evidence and Jhons's statement to police, together amount to evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find Jhons was the man who fired bullets toward the group of people that included Rigmaden, G.R., and D.J. (killing one of them and injuring another).  Having found that there was sufficient evidence identifying Jhons as the shooter, which was the sole focus of Jhons's argument in his opening brief, we note that such a finding also supports verdicts of murder and attempted murder.

In *People v. Lashley* (1991) 1 Cal.App.4th 938, the defendant fired one shot from about 20 yards (60 feet) away, striking the victim.  (*Id.* at p. 943 & fn. 2.)  Emphasizing the standard of review ("[v]iewing the evidence in the light most favorable to the

judgment, as we must"), the appellate court ruled there was sufficient evidence this was an attempted murder, explaining: "The very act of firing a .22-caliber rifle toward the victim at a range and *in a manner that could have inflicted a mortal wound had the bullet been on target* is sufficient to support an inference of intent to kill under the circumstances presented here. Contrary to the argument advanced on this appeal, the evidence need not show in every instance a firing at point-blank range before the trier of fact may conclude that the shooter unambiguously intended to kill. While such evidence undoubtedly creates a strong inference that the killing was intentional [citations], it is not the exclusive means of proving so." (*Id.* at p. 945, italics added.)

The court continued: "Whether a defendant possessed the requisite intent to kill is, of course, a question for the trier of fact. While reasonable minds may differ on the resolution of that issue, our sole function is to determine if *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (*People v. Lashley, supra*, 1 Cal.App.4th at p. 946.) As noted *ante*, we review the entire record in the light most favorable to the verdict and " 'presume[] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " (*People v. Edwards* (2013) 57 Cal.4th 658, 715.) Here, taking into account all of the circumstances surrounding the shooting, including the statement and actions of Jhons, as well as the actions and behaviors in the parking lot that occurred before the shooting, there was sufficient evidence of attempted murder as a rational trier of fact could find Jhons intended to kill both G.R. and D.J. (*Id.* at pp. 945-946; see also *People v. Canizales* (2019) 7 Cal.5th 591, 606 [ "intent to kill often must be inferred from circumstantial evidence surrounding the crime"].)

Accordingly, we need not address Jhons's remaining arguments concerning this claim that (a) seek to undermine the weight and credibility of D.J.'s evidence, (b) highlight what may have been conflicting testimony by other witnesses, and (c) challenge

the strength of the prosecution's case, including Jhons's motive.[2]  (*People v. Ramirez, supra*, 13 Cal.5th at pp. 1117-1118; *People v. Stevenson* (2018) 25 Cal.App.5th 974, 987 [motive for a crime is not an element of the offenses of murder or attempted murder].)

II

*Appellant's Burden & Forfeiture*

Forfeiture principles are implicated by Jhons's claims that the trial court made erroneous evidentiary rulings.  "[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment."  (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.)  As the appellant, it is Jhons's burden on appeal to establish both error *and prejudice*.  (*People v. Homick* (2012) 55 Cal.4th 816, 861; *People v. Reardon* (2018) 26 Cal.App.5th 727, 740.)  Because it is not our role to develop argument for an appellant (*People v. Oates, supra*, 32 Cal.4th at p. 1068, fn. 10), the absence of cogent legal argument or citation to the record allows us to treat a claim as forfeited (*People v. Stanley, supra*, 10 Cal.4th at p. 793; *People v. Johnigan* (2011) 196 Cal.App.4th 1084, 1097-1098).  Further, a party on appeal also may forfeit a contention,

---

[2]  In his reply brief, Jhons argues that his statement to police indicating that he had not seen his cousin Rigmaden in the weeks before the shooting was *not* false, because a police officer did "not specifically ask Jhons if he saw" Rigmaden a couple of hours before the murder; the officer asked only when Jhons had last seen Rigmaden " 'before . . . the night that he died.' "  Contentions by a criminal defendant challenging the evidence supporting a conviction after trial that may be "powerful jury argument[s] in the first instance . . . ha[ve] no merit on appeal," because "it is our duty to consider the facts proven on behalf of the state as paramount."  (*People v. Naughton* (1969) 270 Cal.App.2d 1, 4.)  In fact, Jhons did not make this argument at trial or in his opening brief.  Instead, in closing argument to the jury, defense counsel argued Jhons "said that he didn't see his cousin because he knew that if he said anything about that, that that would just support" the notion he was the shooter.

7

even one concerning a constitutional right, by failing to raise it in the trial court. (*In re Sheena K.* (2007) 40 Cal.4th 875, 880-881.) This rule applies to evidentiary objections as well (§ 353; *People v. Partida* (2005) 37 Cal.4th 428, 433-434.)

Here, Jhons asserts multiple claims of trial court error that are forfeited on appeal due to the aforementioned principles. The claim the trial court should have excluded evidence regarding a box of .45-caliber ammunition that was found in a car he was driving "a week prior" to the shooting is forfeited because he provides no citation to the record reflecting he raised the argument at trial. He cites to a discussion that occurred during a preliminary hearing but that discussion was about the propriety of introducing evidence that the gun that killed Rigmaden had been used in earlier shootings. Nowhere in that pretrial discussion is there a clear objection to the introduction of evidence at trial of ammunition found in the car that Jhons was driving.

Also forfeited—because of the absence of cogent legal argument and adequate citation to the record—is the claim the trial court erred in its ruling granting in part and denying in part Jhons's motion made pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, to suppress his statements to police.

First, Jhons provides only a conclusory argument without pertinent discussion of relevant authority. Citing *People v. Williams* (2010) 49 Cal.4th 405, 425, he contends: "After *Miranda* warning are given, if the suspect indicates that he wishes to remain silent, the interrogation must cease." But *Williams* also stands for the proposition that a defendant has *not* invoked his or her right to silence with a statement that " 'merely express[es] . . . passing frustration or animosity toward the officers,' " " 'amounted only to a refusal to discuss a particular subject covered by the questioning,' " or amounted to a "denial of any knowledge concerning the crime . . . rather than an effort to terminate the interrogation." (*Id.* at pp. 433-434.) In its detailed oral ruling here, the trial court explicitly referenced this latter proposition in *Williams*, explaining: "What [Jhons is] doing here, the Court finds, was more of a denial of guilt rather than a demand in the

8

conversation. It was more consistent with . . . *Williams*." (Italics added.) This ruling was undergirded by the trial court's observations of Jhons's demeanor in the video. Jhons does not acknowledge or address the trial court's reasoning (cf. *People v. Cunningham* (2001) 25 Cal.4th 926, 992 [in reviewing *Miranda* claims, appellate courts "accept the trial court's resolution of disputed facts and inferences . . . if supported by substantial evidence"]) and it is not our role to develop cogent argument for Jhons that the trial court erred.

Second, Jhons fails to support his argument with adequate citations to the record, directing us to *the trial court's characterizations* of his custodial statements rather than to precise locations in the record where his ostensible invocations of a right to remain silent can be found. Next, Jhons's claim that a charge he faced "should have been tried separately" because it was prejudicial to him is forfeited on appeal because he provides no citation to the record reflecting he sought such relief in the trial court. (*People v. Maury* (2003) 30 Cal.4th 342, 392.)

Also forfeited is Jhons's claim the trial court allowed the jury to be "unfairly influenced" by an argument between Rigmaden's family and Jhons's family in the courthouse hallway that at least one juror observed. The record reflects that, with counsel present, the trial court questioned jurors individually about the hallway incident and their ability to remain impartial and was satisfied the incident "would not affect [the jury] in any way." The trial court asked counsel if there was "anything further anybody want[ed] done . . . with the jurors." Defense counsel said, "No." Thus, defendant has not preserved the claim for appeal. (See *People v. Holloway, supra*, 33 Cal.4th at p. 124 [the defendant forfeited a claim he was deprived of his Sixth Amendment right to an impartial jury "by failing to seek the juror's excusal or otherwise object to the court's course of action"].) Finally, Jhons's claim that Facebook evidence should not have been admitted is forfeited because of the absence of any argument showing how the supposed error

9

prejudiced him, and his claim that Google location evidence should not have been admitted is forfeited due to the absence of citations to the record.

III

*Ineffective Assistance of Counsel*

Jhons contends trial counsel provided ineffective assistance in two ways: failure to make an opening statement to the jury and failure to state objections properly. The first contention is unpersuasive, and the second is forfeited on appeal.

To establish a claim of ineffective assistance of counsel, defendant must show: (1) trial counsel's representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms, and (2) a reasonable probability that, but for that deficient representation, the outcome of the proceeding would have been different. (*People v. Mai* (2013) 57 Cal.4th 986, 1009.) "When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance. . . . On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*Ibid.*)

As our Supreme Court has observed, "certain practical constraints make it more difficult to address ineffective assistance claims on direct appeal rather than in the context of a habeas corpus proceeding. [Citations.] The record on appeal may not explain why counsel chose to act as he or she did. Under those circumstances, a reviewing court has no basis on which to determine whether counsel had a legitimate reason for making a particular decision, or whether counsel's actions or failure to take

10

certain actions were objectively unreasonable." (*People v. Mickel* (2016) 2 Cal.5th 181, 198.)

As to Jhons's claim regarding trial counsel's decision to forgo an opening statement to the jury, the record before us poses the practical constraints referenced by the *Mickel* court and precludes us from finding ineffective assistance of counsel. (See *People v. Mitcham* (1992) 1 Cal.4th 1027, 1059 ["The decision[] whether to waive opening statement . . . [is] [a] matter[] of trial tactics and strategy which a reviewing court generally may not second-guess"; "[r]easonably competent counsel could have determined to wait to hear the prosecution's case before deciding whether to present a defense," and "could have determined that the defense's strongest argument was that the prosecution had failed to prove its case beyond a reasonable doubt"].) And, Jhons's claim regarding trial counsel's failure to state proper objections is forfeited because it is not supported by citations to the record.

DISPOSITION

The judgment is affirmed.

/s/
BOULWARE EURIE, J.

We concur:


/s/
ROBIE, Acting P. J.


/s/
DUARTE, J.

11